JOHN C. ABBOTT, Appellant, v. THE NEW YORK PUBLIC LIBRARY, ASTOR, LENOX AND TILDEN FOUNDATIONS, Respondent.

First Department, February 13, 1942.

*Jas. Madison Blackwell* of counsel [*Blackwell Bros.*, attorneys], for the appellant.

*Bert W. Hendrickson* of counsel [*William C. Fiest* and *James McGuirk, Jr.*, with him on the brief; *Ireland & Cohen*, attorneys], for the respondent.

DORE, J. Plaintiff sued defendant, The New York Public Library, Astor, Lenox and Tilden Foundations, Forty-second street and Fifth avenue, New York, N. Y., for personal injuries resulting from an assault upon him therein by another visitor of whose dangerous tendencies plaintiff claims defendant had notice. After a trial before the court and a jury, at the close of the plaintiff's case, the court dismissed the complaint for failure to prove any negligence on defendant's part. From the judgment in defendant's favor entered upon such dismissal, plaintiff appeals.

Proper consideration of the issues requires a somewhat detailed narrative of the facts. On February 22, 1938, at two-forty-five P. M., in the library's main reading room, one Charles Frankel, a visitor therein, without cause or warning attacked and stabbed another visitor, Oscar Stewart, with a knife that resembled a fishing knife having a blade five or six inches long. Stewart had stepped back when he saw the assailant's hand unexpectedly descending upon him and the wound inflicted on Stewart's throat was apparently superficial although it bled profusely. Frankel was immediately taken to defendant's office and questioned by defendant's representative in charge, John Hayden, the night superintendent. Frankel's only explanation of the attack was that Stewart had jostled him as he entered one of the alcoves. In the presence of defendant's employees Frankel threatened Stewart, saying that if he did not get him someone else would. As Stewart's wife had just come home from a hospital nursing a baby, he did not wish to press a charge against Frankel. Stewart testified that no advice to press the charge was given by library representatives who took the knife from Frankel, procured his name and address, and allowed him to go at large without notifying the police at the time. There was another witness to that assault, a frequenter of the library, whose name and address were not secured

on February twenty-second; he later told library officials that he was willing to testify and gave his name and address.

On the following day, February twenty-third, George W. Bergquist, defendant's special investigator, whose duty it is to safeguard library property and the public using the library, learned of the attack from the day janitor and orally told the janitor and the staff in the main reading room to watch for Frankel and to notify Bergquist immediately if Frankel reappeared. Bergquist testified that the night and day janitors had given instructions to the library guards to keep Frankel from the building, but that he did not notify the attendant in the economics reading room, and so far as he knew such attendant was not notified of the incident. On February twenty-third Bergquist sent a detailed report of the assault to the commanding officer of the police of the Fourteenth Precinct, pointing out in his report that the library employee who had handled the case had failed to notify the police and that Frankel had threatened Stewart in the presence of library employees.

On February twenty-fourth, between ten and eleven A. M., one of the guards notified Bergquist that he had seen Frankel on the Fifth avenue steps of the library. Bergquist and the guard immediately went out to search for him but did not find him. On that same day the police reported that they had been watching for Frankel at his home but did not find him there.

On February twenty-fifth Frankel again entered the library, apparently without hindrance from any of the guards, went to the economics reading room and registered his name and address in a room register book provided for that purpose and kept by an attendant at the entrance of the room. The exact time of this entry was not shown, but it was sometime after three-thirty P. M. In charge of that register was a library attendant whose duty it was to see so far as possible that every one entering that room registered his name and address (although Bergquist testified that was not mandatory), to assist the readers in locating material, and to see that slips calling for books were sent to the proper locations. Apparently in the course of these duties the attendant would from time to time be away from the register desk.

On that same day, February twenty-fifth, plaintiff Abbott, an efficiency engineer, entered the economics reading room about five-thirty P. M. to do some research. Having finished his reading, plaintiff started to leave about six-thirty P. M. and at the time everything appeared normal. However, as plaintiff stepped into the hall leading from the economics room, Frankel, who had assaulted Stewart in the library on February twenty-second, similarly attacked plaintiff without any cause, striking him a

number of blows on the head with a hatchet he had brought to the library when he entered. He inflicted injuries including two depressed fractures of the skull made with the hammer end of the hatchet. The injuries concededly were serious, requiring a head operation, but need not be further discussed as we are here concerned with the issue of liability only. After the attack Frankel ran downstairs with the hatchet hanging from his wrist to which it was attached with a leather loop or guard. One Herman Mintzer, a frequenter of the library, who saw the attack, pursued Frankel and notified a guard on the lower floor. Mintzer testified that when he returned to the upper corridor where plaintiff lay unconscious, he did not then notice any guards there and did not see any attendant at the desk in the economics room at the time of the assault.

Plaintiff contends that he was an invitee lawfully on defendant's premises, a public place; that there is no possible issue of contributory negligence on his part; and that what constituted reasonable care on defendant's part was an issue of fact to be decided by the jury in the light of all the facts and surrounding circumstances, including defendant's knowledge of the prior assault, and should not have been disposed of as a matter of law by the court. Defendant contends that plaintiff was not an invitee but merely a gratuitous licensee on the premises solely for his own purposes to use the facilities defendant, a domestic charitable corporation, furnished without charge; that accordingly defendant's sole duty was to refrain from willful and wanton injury; and that the complaint was properly dismissed as plaintiff wholly failed to prove any negligence whatever on defendant's part causing or contributing to cause the injuries.

Defendant's contention that plaintiff was not an invitee is in our opinion without merit. The verified answer alleges that the library was maintained and operated by defendant for use by the general public to furnish educational and recreational facilities " for the general welfare of all persons accepting the defendant's invitation to use " the library, and was open to all such persons resorting to it free of charge. Irrespective of this conclusive admission by defendant in its pleading of an invitation to the general public to use the library, we think it too clear for argument that persons lawfully using a public library such as this defendant operates, are impliedly invited to use it to further the purposes for which it was established and are not bare licensees but invitees. (*La Marca* v. *Brooklyn Public Library*, 256 App. Div. 954.) To such invitees defendant owes the duty of reasonable care to keep the place reasonably safe; and, as it is a public place, that includes the duty to supervise it adequately so that persons lawfully using

it are not unreasonably exposed to danger. Defendant recognized this obligation as it maintained a system of guards under a special investigator or chief not merely to protect its property but to protect the patrons, members of the general public who accepted the invitation to use the library for the purposes for which it is maintained.

The act of a third person such as Frankel, not an employee or otherwise connected with defendant, committing an intentional tort or crime, which he concededly did, is ordinarily a superseding cause of injury for which defendant would not be liable. An exception to that rule, however, is stated in the American Law Institute Restatement of the Law of Torts as follows:

" § 449. Tortious or criminal acts the probability of which makes the actor's conduct negligent.

" If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." (2 Restatement of the Law of Torts, Negligence, chap. 16, § 449, p. 1202.)

To this rule the Restatement adds the following comment:
" Comment:

" a. The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability, cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk, from which it was the purpose of the duty to protect him, resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity." (Id. p. 1202.)

" Negligence is gauged by the ability to anticipate." (*McGlone* v. *Angus, Inc.*, 248 N. Y. 197, 199.) " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension * * *. The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 344, 345.) Defendant need not have notice of the particular manner in which an accident would occur if it was reasonably foreseeable by an ordinarily prudent person. (*Munsey* v. *Webb*, 231 U. S. 150, 156.)

We think these rules are here applicable and require a reversal of the judgment appealed from. Defendant knew that the same assailant, Frankel, had three days before in the same library made

a wholly unjustified assault with a dangerous knife on another visitor. With that knowledge and the added knowledge of threats made by Frankel after the assault, defendant allowed Frankel to go at large without even notifying the police at the time, although there is evidence that there was in addition to Stewart, the man attacked, another witness available. Defendant also knew on February twenty-fourth that Frankel was not only at large but had again attempted to enter the library. The evidence allows the inference that some one or more of defendant's guards recognized Frankel on sight. Nevertheless, the very next day defendant's guards allowed Frankel, armed with a hatchet, again to enter the library. Frankel further indicated his presence there sometime after three-thirty P. M. by writing his own name and address on the register of the economics room at the entrance thereof. There was evidence that any one registering at the entrance to the economics room would be facing the attendant there and in full view of a guard in the corridor unless the guard was seated in his chair at the side of the corridor. No warning or instructions of any kind with regard to Frankel had been given by the defendant to the attendant in the economics room. No written memorandum of the February twenty-second assault was circulated either to attendants or guards. There was further evidence that no instructions were given to attendants or guards of the additional and alarming fact that Frankel had again attempted to enter the building on February twenty-fourth.

Defendant was not an insurer of the safety of persons lawfully using its library but it owed them the duty of ordinary care and reasonable supervision so that such patrons would not be unreasonably exposed to dangers including dangers known to defendant but not to its invitees. On the facts established by plaintiff, we think that varying inferences were possible with respect to defendant's ability reasonably to anticipate the danger to be apprehended and its use of ordinary care in reasonably guarding against such danger; that the issue of defendant's claimed negligence in the performance of such duty was an issue of fact to be determined by the jury on all the relevant facts and surrounding circumstances under a proper charge from the court; and that it was accordingly error for the court to dismiss the complaint at the close of plaintiff's case.

The judgment of the trial court should be reversed, with costs of this appeal to the appellant, and a new trial ordered.

UNTERMYER and CALLAHAN, JJ., concur; MARTIN, P. J., and GLENNON, J., dissent and vote to affirm.

Judgment reversed, with costs of appeal to the appellant, and a new trial ordered.