694 A.2d 1017

MARY CLOHESY, EXECUTRIX OF THE ESTATE OF KATHLEEN DALTON, DECEASED, PLAINTIFF–APPELLANT, v. FOOD CIRCUS SUPERMARKETS, INC., T/A TWIN COUNTY GROCERS OR FOODTOWN OF RED BANK, DEFENDANT–RESPONDENT, AND PHILIP REARDON, JR., DEFENDANT.

Argued March 3, 1997—Decided June 26, 1997.

497

498

*Michael D. Schottland* argued the cause for appellant (*Schottland, Manning & Rosen,* attorneys; *Mr. Schottland* and *Nicholas C. Caliendo,* on the brief).

*Jane Garrity Glass* argued the cause for respondent (*Garrity, Graham & Favetta,* attorneys; *Michael A. Graham,* of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

The issue in this appeal is whether the owner of a large supermarket with a correspondingly large parking lot had a duty in 1991 to provide security or warnings in its parking lot to protect its customers from the criminal acts of third parties, when prior similar criminal acts had not occurred in the parking lot. Kathleen Dalton, a customer at defendant's supermarket, was abducted from defendant's parking lot and later murdered. Prior to this

incident, there had never been an abduction on Food Circus Supermarkets, Inc.'s ("Foodtown") property.

The trial court granted Foodtown's motion for summary judgment, finding that plaintiff had failed to establish prior similar incidents that would justify the imposition of a duty on defendant. The Appellate Division affirmed, with one judge dissenting. 293 *N.J.Super.* 217, 679 *A.*2d 1230 (1996). Plaintiff has appealed as of right based on that dissent. *R.* 2:2–1(a)(2). We now reverse.

I

Plaintiff Mary Clohesy, executrix of Kathleen Dalton's estate, filed wrongful death and survival causes of action against Foodtown and Ms. Dalton's killer, Philip Reardon, Jr. The complaint alleges that Foodtown was negligent in failing to provide any security or warnings in the parking lot.

The facts surrounding the murder of Kathleen Dalton are undisputed. On July 15, 1991, Ms. Dalton, who was seventy-nine-years old, went shopping at the Foodtown Supermarket on Broad Street in Red Bank, New Jersey. After completing her shopping at approximately 2:30 p.m., she returned to her car, that was parked in the Foodtown parking lot adjacent to the store. As she was entering her car, Philip Reardon, Jr., who had been loitering in the parking lot, forced her into her car and drove off. Reardon covered Ms. Dalton's nose and mouth with duct tape, thereby causing her to die of asphyxiation. Reardon was apprehended, and later convicted of kidnapping, robbery, theft, and murder.

The Broad Street Foodtown in Red Bank consists of 44,279 square feet and is located on 3.32 acres. Foodtown also owned and operated the parking lot that contained 200 parking spaces.

After discovery had been completed, Foodtown moved for summary judgment, contending that it had breached no legal duty owed to Ms. Dalton. It argued that because of the absence of a prior carjacking, murder, or similar criminal incident in the parking lot within a reasonable time before the abduction of Ms.

Dalton, plaintiff could not establish foreseeability. The trial court granted Foodtown's motion, concluding that plaintiff's failure to allege prior similar criminal incidents in the parking lot precluded the imposition of a legal duty upon Foodtown. Plaintiff voluntarily dismissed the complaint against Reardon in order to appeal the dismissal of the complaint against Foodtown. *R.* 2:2–3(a)(1).

The Appellate Division affirmed, finding that defendant owed no duty to decedent to provide security or to post warnings in the parking lot because the abduction and murder of Ms. Dalton were not foreseeable absent prior similar incidents. 293 *N.J.Super.* at 221–23, 679 *A.*2d 1230. The Appellate Division stated that "[u]nlike the situation in *Butler [v. Acme Markets, Inc.,* 89 *N.J.* 270, 445 *A.*2d 1141 (1982)]*,* there were no prior incidents of a nature that would render foreseeable the carjacking, assault, kidnapping and fatal gagging of a patron." *Id.* at 222, 679 *A.*2d 1230. Under the Appellate Division's decision, in order for a criminal act to be foreseeable, the business owner must in most cases be aware of prior similar criminal incidents on the business premises. *Id.* at 224–25, 679 *A.*2d 1230. The majority acknowledged, however, that in some circumstances, prior similar incidents on a defendant's property would not be required before imposition of a duty. *Id.* at 224, 679 *A.*2d 1230. The majority cited situations where there have been "repeated carjackings or assaults upon persons in the immediate vicinity, or an extraordinary increase of such incidents in the community," as examples of situations that might be sufficient to create a duty. *Ibid.*

The dissenting member of the panel rejected the majority's adoption of a refinement of the prior similar incidents approach to determining foreseeability. *Id.* at 228–43, 679 *A.*2d 1230. Instead, he endorsed the use of the "totality of the circumstances" to determine a store owner's duty. *Id.* at 239, 679 *A.*2d 1230. Applying the totality of the circumstances approach, the dissenting member of the panel found that defendant did owe a duty to Ms. Dalton. *Id.* at 239–43, 679 *A.*2d 1230.

## II

### -A-

The issue whether a defendant owes a legal duty is generally a question of law for the court to decide. *Carvalho v. Toll Bros. & Developers,* 143 *N.J.* 565, 572, 675 *A.*2d 209 (1996). Similarly, the scope of a duty owed is a matter of law. *Kelly v. Gwinnell,* 96 *N.J.* 538, 552, 476 *A.*2d 1219 (1984). The determination of the existence of a "duty to exercise reasonable care to avoid the risk of harm to another ... is one of fairness and policy that implicates many factors." *Carvalho, supra,* 143 *N.J.* at 572, 675 *A.*2d 209; *see also Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 515, 688 *A.*2d 1018 (1997); *Snyder v. American Ass'n of Blood Banks,* 144 *N.J.* 269, 292, 676 *A.*2d 1036 (1996); *Dunphy v. Gregor,* 136 *N.J.* 99, 110, 642 *A.*2d 372 (1994). In many instances, a landowner's liability for injuries is no longer based exclusively on the status of the injured party. *Kuzmicz, supra,* 147 *N.J.* at 515, 688 *A.*2d 1018; *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 509, 677 *A.*2d 705 (1996). However, in a case such as the present one in which the legal relationship is clearly defined, the common law classifications can be useful in determining the existence and scope of the duty of care owed.

Foreseeability of harm alone is not dispositive of whether a duty exists. *Goldberg v. Housing Auth. of Newark,* 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962). "[I]t is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.,* 135 *N.J.* 182, 194, 638 *A.*2d 1288 (1994). "[T]he concept of foreseeability [subsumes] many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the nature of the risk, and the ability and opportunity to exercise care." *Ibid.*

Foreseeability as a determinant of a business owner's duty of care to its customers is to be distinguished from foreseeability as a determinant of whether a breach of duty is a proxi-

mate cause of an ultimate injury. Foreseeability as it impacts duty determinations refers to

> "the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care."

> [*Hill v. Yaskin,* 75 *N.J.* 139, 144, 380 *A.*2d 1107 (1977) (quoting 57 *Am.Jur.2d Negligence* § 58 (1970)).]

Foreseeability that affects proximate cause, on the other hand, relates to "the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff" reasonably flowed from defendant's breach of duty. *Id.* at 143, 380 *A.*2d 1107. Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty. Foreseeability in the present case is limited to the existence and scope of duty owed to Ms. Dalton.

-B-

Plaintiff contends that a sufficient evidential basis was presented to the trial court to establish foreseeability of harm to customers of Foodtown who used the parking lot.

The discovery in this case revealed that Foodtown was located next to a liquor store and a gasoline station. Foodtown provided no security for its parking lot. The area of the parking lot from which Ms. Dalton was kidnapped was located beside a section of the store that had no windows or glass doors. The store wall adjacent to where Ms. Dalton parked was a solid concrete structure. It did not contain a surveillance camera or any warning to customers. Foodtown's security was limited to the deterrence, detection, and apprehension of shoplifters inside the store.

The Red Bank Police Department officially recorded approximately sixty criminal incidents either on or near the Foodtown premises over the two-and-one-half-year period that preceded Ms. Dalton's kidnapping and murder on July 15, 1991. The offenses consisted of thirty shopliftings, twelve thefts either inside the store or in the parking lot, four driving while intoxicated, four

disorderly persons, four assaults, one criminal mischief, one trespassing, and one possession of a controlled dangerous substance. As significant as the number of offenses is the escalating nature of the occurrences on Foodtown's property. There were four in 1989, seven in 1990, and thirteen in 1991. That represents a significant increase between 1989 and 1991.

Plaintiff also presented a report prepared by William A. Torphy, a commercial facility design, management, and security expert. He conducted a security evaluation of the Red Bank Foodtown and concluded that its failure to provide any security for its parking lot deviated from the industry's standard of care and proximately caused Ms. Dalton's death. He found three reasons for the deviation. First, the poor architectural design that permitted parking in an area of the building that had no windows made it impossible for employees and customers inside the store to scan the parking lot for problems. Second, a Mobil gasoline station and a liquor store adjacent to the parking lot served as gathering places for loiterers and attracted persons to drink and "hang around." Third, Foodtown was located in an area where criminal conduct could reasonably be anticipated.

-C-

This Court has previously held that business owners and landlords have a duty to protect patrons and tenants from foreseeable criminal acts of third parties occurring on their premises. *Butler, supra,* 89 *N.J.* at 280, 445 *A.*2d 1141 (finding that business owners have a duty to protect invitees from foreseeable criminal acts of third parties); *Trentacost v. Brussel,* 82 *N.J.* 214, 231, 412 *A.*2d 436 (1980) (stating "a landlord has a legal duty to take reasonable security measures for tenant protection on the premises"); *Braitman v. Overlook Terrace Corp.,* 68 *N.J.* 368, 383, 346 *A.*2d 76 (1975) (stating "[a] residential tenant can recover damages from his landlord upon proper proof that the latter unreasonably enhanced the risk of loss due to theft by failing to supply adequate locks to safeguard the tenant's premises after suitable notice of

the defect"). "Uniting *Braitman, Trentacost,* and *Butler* is the premise that landlords and business owners should be liable for foreseeable injuries that occur on their premises" as the result of criminal conduct of third persons. *Kuzmicz, supra,* 147 *N.J.* at 517, 688 *A.*2d 1018. Given our existing jurisprudence respecting business owners' and landlords' liability for injuries caused by criminal conduct of third parties, the fairness and policy elements of duty considerations have been found to exist. Consequently, the focus on the duty question in the present case is primarily on foreseeability.

### III

Plaintiff argues that both of the lower courts erred when they interpreted *Butler* to require proof of prior similar criminal incidents before foreseeability can be established. Plaintiff maintains that the evidence required the courts to recognize that a duty existed and that the case should have been presented to a jury to decide (1) whether a duty had been breached, and (2) whether the breached duty proximately caused Ms. Dalton's death. As an alternative, plaintiff argues that if the Court concludes that *Butler* requires prior similar criminal incidents to establish foreseeability, then the Court should adopt the more liberal "totality of the circumstances" approach to foreseeability.

### -A-

*Butler* involved a shopper at a supermarket who was mugged during the evening in the parking lot of an Acme store located in Montclair. *Butler, supra,* 89 *N.J.* at 274, 445 *A.*2d 1141. The trial court vacated a jury verdict in favor of the shopper, holding that Acme owed no duty to the shopper. *Ibid.* The Appellate Division reversed, finding that Acme owed a duty to its customers to protect them from foreseeable criminal acts. *Id.* at 275, 445 *A.*2d 1141. In affirming, this Court observed that

[t]he proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises

upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation. *The measure of that care has been described as due care under all the circumstances.* Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. *If the reasonably prudent person would foresee danger resulting from another's voluntary criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability. Foreseeability of the risk that criminal acts of others would cause harm is the crucial factor.*

[*Butler, supra,* 89 *N.J.* at 275–76, 445 *A.*2d 1141 (emphasis added) (citations omitted) (internal quotation marks omitted).]

The *Butler* Court had no occasion to discuss whether prior similar criminal incidents were essential to foreseeability. There, foreseeability was apparent because "[s]even muggings had occurred on the Acme premises in a year's time, five of which occurred in the evenings during the four months preceding the attack on Mrs. Butler." *Id.* at 274, 445 *A.*2d 1141. Indeed, Acme recognized there was a problem and hired an off-duty police officer to supply security during certain evenings. *Ibid.* The security person's duties included patrolling both inside and outside the store. *Ibid.* The focus in *Butler* was, instead, on whether liability for foreseeable criminal conduct of third parties committed on a shopkeeper's premises should be visited upon the shopkeeper. It was argued that the responsibility for security resides in the "governmental sector with its attendant police power." *Id.* at 277, 445 *A.*2d 1141. As such, foreseeability in *Butler* related to proximate cause in the breach of duty context rather than the existence of a duty. Furthermore, *Butler* was not tried on the theory that there was no security in the parking lot. It was tried under the twin theories of inadequate security and a failure to warn customers of the dangerous condition existing in the parking lot.

Although the *Butler* Court did not discuss whether prior similar criminal incidents were required, it nonetheless limited the scope of its holding. To guard against making a shopkeeper liable for *all* crimes occurring on the shopkeeper's premises, the Court adopted the *Restatement (Second) of Torts* Section 344, Comment (f), as the standard for determining which criminal incidents may

give rise to liability. *Butler, supra,* 89 *N.J.* at 280, 445 *A.*2d 1141.
Section 344 provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
>
> [*Restatement (Second) of Torts* § 344 (1965).] Comment (f) states:
>
> *Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.
>
> [*Id.* cmt. (f).]

By adopting Section 344 and Comment (f) of the *Restatement* in *Butler,* and in view of our landlord-tenant decisions respecting foreseeability of criminal incidents, we have already applied the totality of the circumstances standard. Section 344 of the *Restatement* makes a shopkeeper liable for failing to discover criminal acts that are "being done *or* [that] are likely to be done." *Id.* § 344 (emphasis added). We believe the total circumstances should be consulted to decide when criminal conduct is "likely to be done." *Ibid.; see Morris v. Krauszer's Food Stores,* 300 *N.J.Super.* 529, 534–36, 693 *A.*2d 510 (App.Div.1997) (holding that the totality of the circumstances should be considered when deciding whether criminal assaults are foreseeable). In *Butler,* the Court stated "[t]he measure of ... care [a business owner must undertake] is 'due care under all the circumstances.'" *Butler, supra,* 89 *N.J.* at 275–76, 445 *A.*2d 1141 (quoting *Bozza v. Vornado, Inc.,* 42 *N.J.* 355, 359, 200 *A.*2d 777 (1964)). The phrase "under all the circumstances" is synonymous with the totality of

the circumstances and the two phrases are used interchangeably. The flexible, practical totality of the circumstances standard has also been adopted for Fourth Amendment probable cause determinations. *State v. Novembrino*, 105 *N.J.* 95, 119, 519 *A.*2d 820 (1987).

The totality of the circumstances standard encompasses all the factors a reasonably prudent person would consider. In *Trentacost*, that included evidence of the "high incidence of crime in the neighborhood ... [and] an attempted theft within the building." *Trentacost, supra*, 82 *N.J.* at 223, 412 *A.*2d 436; *see id.* at 218–19, 412 *A.*2d 436. In *Braitman*, evidence of break-ins at other apartments in the general area where Braitman resided was considered on the issue of foreseeability when determining whether a duty existed. *Braitman, supra*, 68 *N.J.* at 373, 346 *A.*2d 76.

The principle to be extracted from the landlord-tenant cases that preceded *Butler* is that the determination of whether a duty exists does *not* depend on the existence of prior similar criminal incidents, even though foreseeability was the driving consideration. The totality of the circumstances controlled, and that included criminal activities in close proximity to the landowner's premises.

-B-

We recognize that over the years, distinctions have developed in the law between actual and constructive notice. Evidence of prior similar criminal incidents on the premises would place a shopkeeper on notice that its customers may be in danger of being criminally assaulted. Constructive notice to a landowner or shopkeeper can be implied from the totality of the surrounding circumstances. In the present case that distinction is not significant because

[t]he requirement of actual or constructive knowledge is merely a means of applying the general rule ... that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances.

[*Bridgman v. Safeway Stores, Inc.*, 53 *Cal.*2d 443, 2 *Cal.Rptr.* 146, 148, 348 *P.*2d 696, 698 (1960).]

*See also Bozza, supra*, 42 *N.J.* at 360, 200 *A.*2d 777 (stating that when a plaintiff can demonstrate the reasonable probability that "the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition"). The criminality of the abduction and murder of Ms. Dalton "is but one circumstance in the foreseeability of harm." *Genovay v. Fox*, 50 *N.J.Super.* 538, 551, 143 *A.*2d 229 (App.Div.1958), *rev'd on other grounds*, 29 *N.J.* 436, 149 *A.*2d 212 (1959).

Other jurisdictions have also rejected the prior similar criminal incidents approach and have adopted the totality of the circumstances standard. *Morgan v. Bucks Assocs.*, 428 *F.Supp.* 546, 548–50 (E.D.Pa.1977); *Czerwinski v. Sunrise Point Condominium*, 540 *So.*2d 199, 200–01 (Fla.Dist.Ct.App.1989); *Paterson v. Deeb*, 472 *So.*2d 1210, 1218–20 (Fla.Dist.Ct.App.1985); *Willie v. American Cas. Co.*, 547 *So.*2d 1075, 1083 (La.Ct.App.1989); *Erickson v. Curtis Inv. Co.*, 432 *N.W.*2d 199, 201–02 (Minn.Ct.App. 1988), *aff'd*, 447 *N.W.*2d 165 (Minn.1989); *Doud v. Las Vegas Hilton Corp.*, 109 *Nev.* 1096, 864 *P.*2d 796, 799–801 (1993); *Foster v. Winston–Salem Joint Venture*, 303 *N.C.* 636, 281 *S.E.*2d 36, 38–40 (1981); *Small v. McKennan Hosp.*, 403 *N.W.*2d 410, 412–13 (S.D.1987). Those courts generally do not distinguish between crimes against property and crimes against persons, reasoning that property crimes can easily escalate to violent crimes. Those jurisdictions that apply the totality of the circumstances rule consider all prior criminal incidents occurring on the landowner's premises and adjacent properties, whether similar or not, as well as other types of evidence such as the nature, location, condition, and the architectural design of the landowner's property.

More than a decade ago, the California Supreme Court considered and rejected the prior similar incidents rule for establishing foreseeability. *Isaacs v. Huntington Mem'l Hosp.*, 38 *Cal.*3d 112, 211 *Cal.Rptr.* 356, 695 *P.*2d 653 (1985). Chief Justice Bird writing for that Court found the rule was fatally flawed for four reasons:

First, the rule leads to results which are contrary to public policy. The rule has the effect of discouraging landowners from taking adequate measures to protect premises which they know are dangerous. This result contravenes the policy of preventing future harm. Moreover, under the rule, the first victim always loses, while subsequent victims are permitted recovery. Such a result is not only unfair, but is inimical to the important policy of compensating injured parties....

Second, a rule which limits evidence of foreseeability to prior similar criminal acts leads to arbitrary results and distinctions. Under this rule, there is uncertainty as to how "similar" the prior incidents must be to satisfy the rule. The rule raises a number of other troubling questions. For example, how close in time do the prior incidents have to be? How near in location must they be? The rule invites different courts to enunciate different standards of foreseeability based on their resolution of these questions.

Third, the rule erroneously equates foreseeability of a particular act with previous occurrences of similar acts. This court has already rejected that notion. The mere fact that a particular kind of an accident has not happened before does not ... show that such accident is one which might not reasonably have been anticipated. Thus, the fortuitous absence of prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.

Finally, the "prior similar incidents" rule improperly removes too many cases from the jury's consideration. It is well established that foreseeability is ordinarily a question of fact.

[*Id.* at 361–62, 695 *P.*2d at 658–59 (citations omitted) (internal quotation marks omitted) (alteration in original).]

Eight years later, the California Supreme Court revisited *Isaacs* when it was required to decide whether a shopping center owner was required to hire security guards for common areas in order to satisfy its duty of making those common areas reasonably safe. *Ann M. v. Pacific Plaza Shopping Ctr.*, 6 *Cal.*4th 666, 25 *Cal. Rptr.*2d 137, 863 *P.*2d 207 (1993).

Ann M., an employee of a photo processing service located in a secluded area of the defendant shopping center, was raped shortly after opening the store. *Id.* at 139–40, 863 *P.*2d at 209–10. The employee sued the shopping center, claiming it was negligent because it failed to protect her from an unreasonable risk of harm. *Id.* at 140–41, 863 *P.*2d at 210–11. The employee offered evidence of prior criminal activity which included evidence of a purse snatching, an assault, and robberies on the shopping center premises. *Id.* at 140, 863 *P.*2d at 210. Additionally, plaintiff presented evidence that as a result of concerns expressed by employees and

tenants of the shopping center regarding the presence of transients who loitered around the common areas, a security company was hired to patrol the area by car three to four times per day. *Ibid.* Ann M. was raped after the motor patrol had been instituted. *Ibid.*

Although the critical issue presented was the scope of duty owed based on the failure to have a security guard on duty for the common areas at the time of the rape rather than the question of the existence of a duty, the Court nonetheless revisited the role prior criminal incidents should play in the formulation of a duty. *Id.* at 143–46, 863 *P.*2d at 214–16. The Court agreed that "[f]oreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court." *Id.* at 145, 863 *P.*2d at 215. The Court then observed:

> Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable. Upon further reflection and in light of the increase in violent crime, refinement of the rule enunciated in *Isaacs, supra,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, is required.

> . . . .

> Turning to the question of the scope of a landlord's duty to provide protection from foreseeable third party crime, we observe that, before and after our decision in *Isaacs,* we have recognized that the scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed....

> While there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a "minimal burden." The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. No one really knows why people commit crime, hence no one really knows what is adequate deterrence in any given situation. Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. For these reasons, we conclude that a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises. To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well established policy in this state.

512

[*Id.* at 145–46, 863 *P.*2d at 215–16 (internal citations omitted) (internal quotation marks omitted) (footnote omitted).]

Based on the facts, the Court concluded that "violent criminal assaults were not sufficiently foreseeable to impose a duty upon Pacific Plaza to provide security guards in the common areas." *Id.* at 146, 863 *P.*2d at 216.

One commentator has accurately concluded that California has retreated from its *Isaacs* totality of the circumstances rule "to a rule under which prior similar incidents almost always will be necessary to impose upon landowners a duty to provide security." Donna Lee Welch, Case Comment, *Ann M. v. Pacific Plaza Shopping Center: The California Supreme Court Retreats From its 'Totality of the Circumstances' Approach to Premises Liability*, 28 *Ga. L.Rev.* 1053, 1064 (1994).

The Tennessee Supreme Court recently rejected the prior similar offense rule and adopted a version of the totality of the circumstances rule that it called "a balancing approach." *McClung v. Delta Square Ltd. Partnership*, 937 *S.W.*2d 891, 901 (Tenn.1996). "The balancing approach acknowledges that duty is a flexible concept, and seeks to balance the degree of foreseeability of harm against the burden of the duty to be imposed." *Ibid.*

Under *Ann M.* and *McClung*, the requisite level of foreseeability is determined by the duty alleged to have been breached. For instance, if an injured invitee were to claim that a possessor of the land had a duty to warn of the risk of criminal attacks, or other dangers on the premises, rather than claiming that the possessor of the land had a duty to provide security, the level of foreseeability required would be less and arguably could be established by circumstances other than prior similar incidents. On the other hand, if the plaintiff were to claim that the landowner had a duty to provide security, under *Ann M.* and *McClung* the plaintiff would be required to show prior similar criminal incidents on the premises or other compelling evidence establishing the high degree of foreseeability necessary to impose a duty on the possessor of the land. A lack of prior similar criminal incidents will almost

always be fatal to a plaintiff claiming that the landowner had a duty to provide security.

Recently, the West Virginia Supreme Court also has recently addressed the issue of a landowner's liability for criminal assaults occurring in parking lots of shopping malls. In *Doe v. Wal–Mart Stores, Inc.*, 198 *W.Va.* 100, 479 *S.E.*2d 610 (1996), a third person forced a shopper into her car as she approached it in a mall parking lot. *Id.*, 479 *S.E.*2d at 613. The culprit forced the shopper to drive to a secluded area, where he raped and abandoned her. *Ibid.* The Court held that because the victim was a business invitee of Wal–Mart, it "had a duty to protect [her] from the foreseeable criminal activity of third parties on the premises," including the parking lot. *Id.* at 617. It recognized, however, that general knowledge of prior unrelated incidents of criminal activity in close proximity to a landowner's premises "is not alone sufficient to impose a duty on the landlord." *Id.* at 616. It acknowledged, however, that "a possessor of land who holds the land open to members of the public to enter in response to his invitation, by virtue of his status alone, . . . [has] a duty to protect persons on the premises from the [foreseeable] criminal activity of third parties." *Id.* at 616.

Still other jurisdictions have adopted the imminent harm approach to foreseeability. Under that approach, a business owner's duty to protect business invitees from criminal acts of third parties is limited to those situations in which the owner knows that a criminal attack is imminent. *Bailey v. Bruno's, Inc.*, 561 *So.*2d 509, 510–11 (Ala.1990); *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 *S.C.* 479, 238 *S.E.*2d 167, 168–69 (1977); *Castillo v. Sears, Roebuck & Co.*, 663 *S.W.*2d 60, 66 (Tex.App.1983); *Wright v. Webb*, 234 *Va.* 527, 362 *S.E.*2d 919, 922 (1987). Foreseeability under the imminent harm approach is very difficult to establish because a plaintiff must prove that the business owner knew or had reason to know that the criminal attack was occurring or about to occur.

-C-

The theme to be extracted from the recent out-of-state cases that have rejected the prior similar incident rule to any degree

rests on the specificity and strictness that are infused into the definitional standard of foreseeability. The foreseeability standard that may be synthesized from these cases is one that posits liability in terms of where, along a spectrum ranging from the general to the particular, foreseeability is ultimately found. A broad view of these cases reasonably permits the conclusion that the extent of liability and degree of foreseeability stand in direct proportion to one another. The more particular is the foreseeability ... the more just is it that liability be imposed and recovery allowed.

[*People Express Airlines, Inc. v. Consolidated Rail Corp.* 100 *N.J.* 246, 263, 495 *A.*2d 107 (1985) (citations omitted).]

■■■■ Our prior decision in *Butler* and those decisions in the related area of landlord liability to tenants, and elsewhere in our tort law jurisprudence, persuade us to reject the prior similar incident rule in favor of the totality of the circumstances approach. Furthermore, courts in this State have consistently applied the totality of the circumstances rule when determining the existence and scope of duty. *Brett, supra,* 144 *N.J.* at 509, 677 *A.*2d 705; *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 438, 625 *A.*2d 1110 (1993); *Di Cosala v. Kay,* 91 *N.J.* 159, 176, 450 *A.*2d 508 (1982); *Johnson v. Usdin Louis Co.,* 248 *N.J.Super.* 525, 529, 591 *A.*2d 959 (App.Div.), *certif. denied,* 126 *N.J.* 386, 599 *A.*2d 163 (1991). Under that approach, we conclude that it was foreseeable that over the course of time an individual would enter the parking lot and assault a Foodtown customer. Theft offenses frequently escalate into more violent crimes. The crime rate in the area increased substantially in the two years preceding the abduction and murder. In addition, the United States Justice Department has reported that in 1994, approximately 757,000 violent crimes such as rape, robbery, and assaults occurred in parking lots located throughout this country. In the same year, a study conducted by Liability Consultants, Inc. of Framingham, Massachusetts revealed that parking lots were the most likely place for an attack that could result in a premises liability lawsuit. Scott E.

Kangas, *The Fundamentals of Parking Lot Protection, Security Mgmt.*, July 1996, at 44, 44.

Ms. Dalton was abducted from a section of the parking lot that was opposite a concrete wall that was not visible from within the store. Foodtown provided no passive or active security for the parking lot. Passive security refers to physical design features, architectural design, and lighting. Donald R. Monahan, *Maximizing Safety in Parking Structures, Facilities Design & Mgmt.*, Apr. 1997, at 24, 24. Active security refers to human activity that may involve specialized equipment such as security patrols or guards, intercoms, and closed circuit television systems. *Ibid.*

Although we do not heavily rely on the common law classification of Ms. Dalton as an invitee, we cannot disregard that fact. The *Restatement (Second) of Torts* Section 314A states that a possessor of land who holds it open to the public is under a duty to members of the public who enter in response to the possessor's invitation to take reasonable action to protect them against unreasonable risk of physical harm. *Restatement (Second) of Torts* § 314A (1965). Thus, that section of the *Restatement* creates a duty based on status alone. In light of that relationship and the totality of the circumstances, the imposition of a duty on the possessor of land to exercise reasonable care to prevent foreseeable harm to its customers comports with notions of fairness and sound public policy.

*Butler* rejected all public policy and economic reasons for not imposing liability on supermarket owners for injuries caused by foreseeable criminal conduct. Prior to *Butler,* the reasons for rejecting the imposition of such a duty had been expressed in *Goldberg, supra,* 38 *N.J.* 578, 186 *A.*2d 291. The first point made by the *Goldberg* Court was that police work is highly specialized and there is no room for private police forces. *Id.* at 589, 186 *A.*2d 291. The *Butler* Court found that because Acme had employed trained police officers, the *Goldberg* Court's concern was not relevant. *Butler, supra,* 89 *N.J.* at 278, 445 *A.*2d 1141. Additionally, the *Butler* Court noted that private security services have

become more common and are regulated by state statute. *Id.* at 278–79, 445 *A.*2d 1141. The second *Goldberg* concern was the imposition of the cost of security on the tenants. *Id.* at 278, 445 *A.*2d 1141. The *Butler* Court found that allocating the cost of security to business owners, and indirectly to patrons, was consistent with the common law. *Id.* at 279, 445 *A.*2d 1141. The final *Goldberg* concern was the inherent vagueness of the proposed duty. *Id.* at 278, 445 *A.*2d 1141. The *Butler* Court acknowledged that the validity of that concern but agreed with Justice Jacobs's statement in the dissent of *Goldberg* that, " 'that duty was no more vague than is the test of reasonableness throughout our law generally.' " *Id.* at 279, 445 *A.*2d 1141 (quoting *Goldberg, supra,* 38 *N.J.* at 605–06, 186 *A.*2d 291 (Jacobs, J., dissenting)).

Having extended an invitation to use the parking lot to shop at Foodtown, defendant was obligated not to engage in any affirmative actions or omissions that would unreasonably create or increase the risk of injury to shoppers from the criminal activity of a third party. The duty owed requires the possessor of the land to exercise ordinary care to protect invitees from potential injury inflicted by individuals that the landowner could have reasonably foreseen might be present on the premises. The mere fact that a particular kind of incident had not happened before is not a sound reason to conclude that such an incident might not reasonably have been anticipated. Generally, our tort law, including products liability, does not require the first victim to lose while subsequent victims are permitted to at least submit their cases to a jury. For instance, a tavern owner who sells alcohol to minors or visibly intoxicated patrons is not entitled to a liability-free first accident, *Rappaport v. Nichols,* 31 *N.J.* 188, 156 *A.*2d 1 (1959), or a free criminal assault committed by an intoxicated patron, *Steele v. Kerrigan,* 148 *N.J.* 1, 26–27, 689 *A.*2d 685 (1997).

Under the totality of the circumstances approach, the actual knowledge of criminal acts on the property and constructive notice based on the total circumstances are relevant to foreseeability. As in this case, foreseeability can stem from prior criminal

acts that are lesser in degree than the one committed against a plaintiff. It can also arise from prior criminal acts that did not occur on the defendant's property, but instead occurred in close proximity to the defendant's premises. In determining that a criminal assault was foreseeable in the parking lot, we have considered all the criminal acts that have occurred on Foodtown's property and those that occurred in close proximity to its property; the property's size and location; the absence of any security; the architectural design of the building in relation to the area of the parking lot where the crime occurred; the size of the parking lot; the type of business defendant operates; the nature and circumstances of nearby businesses; and the increasing level of crime in the general neighborhood.

The scope of the duty owed includes security for the parking lot. Our courts have recognized for many years that the scope of a landowner's duty to protect its invitees from criminal acts of third parties may include providing security guards. In 1962, Justice Jacobs observed:

[C]ourts have nonetheless repeatedly held that where there are special conditions from which the owner or operator of the premises should recognize and foresee an unreasonable risk or likelihood of harm or danger to invitees from criminal or wrongful acts of others, he must take reasonable precautions which may, under the circumstances, fairly and justly entail the employment of special guards or police. See *Exton v. Central R.R. Co.,* 62 *N.J.L.* 7, 11[42 *A.* 486] (Sup.Ct. 1898), aff'd. 63 *N.J.L.* 356 [46 *A.* 1099] (E. & A. 1899); *Skillen v. West Jersey & Seashore R.R. Co.,* 96 *N.J.L.* 492, 494 [115 *A.* 372] (E. & A.1921); *Sandler v. Hudson & Manhattan R.R. Co.,* 8 *N.J. Misc.* 537, 539, 151 *A.* 99 (Sup.Ct.1930), aff'd. 108 *N.J.L.* 203 [156 *A.* 459] (E. & A. 1931); *Williams v. Essex Amusement Corp.,* 133 *N.J.L.* 218, 219 [43 *A.*2d 828] (Sup.Ct.1945); *Reilly v. 180 Club, Inc.,* 14 *N.J.Super.* 420, 424 [82 *A.*2d 210] (App. Div.1951); *Crammer v. Willston Operating Co., Inc.,* 19 *N.J.Super.* 489, 490 [88 *A.*2d 630] (App. Div.1952); *Becker v. Newark,* 72 *N.J.Super.* 355, 358 [178 *A.*2d 364] (App. Div. 1962); *cf. Neering v. Illinois Central R.R. Co.,* 383 *Ill.* 366, 50 *N.E.*2d 497 (1943); *Quigley v. Wilson Line of Massachusetts,* 338 *Mass.* 125, 154 *N.E.*2d 77, 77 *A.L.R.*2d 499 (1958); *Lillie v. Thompson* 332 *U.S.* 459, 68 *S.Ct.* 140, 92 *L. Ed.* 73 (1947); *McLeod v. Grant County School Dist. No.* 128, 42 *Wash.*2d 316, 255 *P.*2d 360 (1953); *Kendall v. Gore Properties,* 98 *U.S.App. D.C.* 378, 236 *F.*2d 673 (1956); *Restatement, Torts* § 348 (1934). See also *Da Rocha v. New York City Housing Authority,* 109 *N.Y.S.*2d 263 (Sup.Ct.1951), aff'd. 282 *App.Div.* 728, 122 *N.Y.S.*2d 397 (1953); *Geigel v. New York City Housing Authority,* 225 *N.Y.S.*2d 891 (Sup.Ct. 1962); *Hansen v. New York City Housing Authority,* 271 *App. Div.* 986, 68 *N.Y.S.*2d 71 (1947); *cf. Amoruso v. New York City Transit*

518

Authority, 12 App. Div.2d 11, 207 N.Y.S.2d 855 (1960); Abbott v. New York Public Library, 263 App.Div. 314, 32 N.Y.S.2d 963 (1942); Siegel v. 1536–46 St. John's Place Corporation, 184 Misc. 1053, 57 N.Y.S.2d 473 (1945).

[Goldberg, supra, 38 N.J. at 597–98, 186 A.2d 291 (Jacobs, J., dissenting).]

Cf. McGlynn v. Parking Auth. of Newark, 86 N.J. 551, 560–61, 432 A.2d 99 (1981) (holding that garage operator has a duty to protect parked cars and items found in them from criminal activity); see also Louise Lee, Courts Begin to Award Damages to Victims of Parking–Area Crime, Wall St. J., Apr. 23, 1997, at A1 (giving examples of crime dropping dramatically when security guards are utilized).

Indeed, the widespread and diverse criminal activities that occur on commercial properties such as parking lots and housing developments have influenced some municipalities to require owners to provide security guards or some other security system. Borough of Totowa, N.J., Code §§ 61–4 to –5 (1996) (requiring shopping centers to maintain a guard and a roaming security vehicle); Borough of South River, N.J., Code § 155–2 (Supp.1996) (requiring commercial establishments open for business after 11:00 p.m. to employ a security guard or install a burglar alarm); Township of North Brunswick, N.J., Code § 138–2 (1996) (same); see also 515 Assocs. v. City of Newark, 132 N.J. 180, 183–84, 623 A.2d 1366 (1993) (upholding City of Newark, N.J., Code § 15:13–1 (Supp. 1996) that requires security guards in housing buildings containing over 100 units). The authority for such ordinances is found in the general police power vested in municipalities pursuant to N.J.S.A. 40:48–2, and those additional powers conferred on certain municipalities pursuant to the Optional Municipal Charters Law, N.J.S.A. 40:69A–1 to –210. See Hudson Circle Servicenter, Inc. v. Town of Kearny, 70 N.J. 289, 291–92, 305–11, 359 A.2d 862 (1976) (upholding ordinance requiring twenty-four-hour security services at truck stop); Sunrise Village Assocs. v. Borough of Roselle Park, 181 N.J.Super. 565, 567, 438 A.2d 944 (App.Div.1981) (upholding ordinance requiring security guard at private housing complex), certif. denied, 89 N.J. 413, 446 A.2d 144 (1982); Bonito v. Mayor of Bloomfield, 197 N.J.Super. 390, 401–03, 484 A.2d 1319 (Law Div.1984) (upholding validity of ordinance requiring security

guards at arcades). Ordinances requiring security guards have been found to be constitutional. *515 Assocs., supra,* 132 *N.J.* at 185–88, 623 *A.*2d 1366. Significantly, the totality of the circumstances was considered in determining the reasonableness, and hence the validity, of such ordinances. *Hudson, supra,* 70 *N.J.* at 295–97, 359 *A.*2d 862.

▮▮▮ Recognizing that the scope of the duty owed in the present case includes some security, and that a jury could find that an active security system such as a security guard or a surveillance camera was required to satisfy the duty owed, a finding by a jury that a guard was required would not amount to an improper delegation of the governmental obligation to provide police protection. Whenever a guard is required, a limited role is envisioned for him or her. He or she would not undertake the duties of a police officer, such as investigating crimes, apprehending suspects, and prosecuting criminal offenders. The guard would be available to report suspicious criminal activities to the police and thus help to avert criminal conduct. Based on "the amount of crime occurring in the area," it can be reasonable to require a private landowner "to provide assistance [to the police] in the performance of" their functions. *Id.* at 310 n. 14, 359 *A.*2d 862. Not only would a guard not relieve a municipality of its obligation to provide police protection, but guards also lack the authority to perform police services. Guards serve as a deterrent to crime and assist the police as would any other citizen. Consequently, the requirement of a guard, whether imposed by ordinance or by tort law, does not represent an improper delegation of the governmental obligation to provide police protection. A municipal police force alone cannot possibly provide protection to all citizens in a timely manner given that violent crime is endemic in today's society.

## IV

▮▮▮ To summarize, our consideration of the evidence in light of the totality of the circumstances persuades us to conclude that defendant owed Ms. Dalton a legal duty of care to provide some

measure of security in the parking lot. In the context of determining whether a legal duty existed, it was reasonably foreseeable that she could suffer some injury in the unsecured parking lot. By our holding, we wish to make clear that we have not required Foodtown to provide security guards. We simply hold that the duty to provide security *may* include a security guard as well as any other security system or warnings deemed reasonable under all of the circumstances.

Although not presented in this appeal, we are aware of the potential impact this decision will have on the question of duty owed to customers by small businesses located outside of large malls. The same factors that informed our decision today may well point to a different result when small businesses are involved. That risk determination, however, must be made on a case-by-case basis. But at least one commentator has concluded that under a cost-benefit analysis,

> a parking lot is a vital artery, regulating the flow of a store's customers, the lifeblood of any business. At retail outlets, a convenient parking space may be worth thousands of dollars in customer purchases. Easy access can, however, be a double-edged sword. By providing an open space, parking lots invite not only the desired visitor, but also the predatory one. Balancing these competing considerations is critical. In the long run, the lack of safe and convenient parking may spell the downfall of even an exceptional company.
>
> [Ronald L. Mendell, *Declaring War on Parking Lot Crime, Security Mgmt.*, Dec. 1995, at 46, 46.]

So understood, our decision today does not represent a major change in the law. At most, it simply "nudge[s] the law [articulated in *Butler* ] forward an inch or so." *Hopkins, supra,* 132 *N.J.* at 451, 625 *A.*2d 1110 (Clifford, J., concurring).

The judgment of the Appellate Division affirming the dismissal of the complaint is reversed and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.