760 A.2d 829 (2000)
334 N.J. Super. 661
Thomas WLASIUK, Jr., Plaintiff-Appellant,
v.
James J. McELWEE, Christine McElwee, Christine Hogan, James Hogan, John Doe, (a fictitious name) State Farm Insurance Company and State Farm Indemnity Company, jointly, severally and individually, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2000.
Decided November 1, 2000.
*830 Howard D. Spialter, Union, argued the cause, for appellant (Mr. Spialter, of counsel and on the brief).
Paul J. Endler, Jr., Westfield, argued the cause, for respondents James J. McElwee, Christine McElwee, Christine Hogan and James Hogan (Garrubbo, Romankow & Rinaldo, attorneys; Mr. Endler, on the brief).
Thomas W. Matthews, Roseland, argued the cause, for respondent State Farm Indemnity Company (Soriano, Henkel, Salerno, Biehl & Matthews, attorneys; Mr. Matthews, on the letter brief).
Before Judges KEEFE, EICHEN and STEINBERG.
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Thomas Wlasiuk, Jr., appeals from the entry of summary judgment in favor of defendants James McElwee (McElwee) and State Farm Indemnity Company (State Farm).[1] Plaintiff was a passenger in an automobile operated by McElwee when he was shot during an aborted robbery by an unknown assailant. McElwee had permitted the assailant to enter the vehicle. Plaintiff sued McElwee for personal injuries. He also sued State Farm, seeking uninsured motorist coverage under the State Farm uninsured motorist clause of which plaintiff was a third party beneficiary.
The motion judge granted McElwee's motion for summary judgment on the ground that he did not owe a duty to plaintiff under the circumstances. The Court found that McElwee had no duty to foresee that plaintiff would be shot. The motion judge raised the issue of McElwee's duty sua sponte, inasmuch as McElwee had moved for summary judgment on another ground not relevant to this opinion. Summary judgment was also entered in favor of State Farm because McElwee's insured vehicle was the only vehicle involved in the case. Accordingly, the motion judge found that State Farm's uninsured motorist endorsement was inapplicable by its clear terms.
On appeal, plaintiff challenges both rulings. With respect to the claim against State Farm, the claim is so clearly without merit that a written opinion discussing the issue is not warranted. R. 2:11-3-(e)(1)(E). Therefore, the principal *831 question to be decided on appeal is whether McElwee owed a duty to plaintiff.
Because this matter was decided on a motion for summary judgment, we are required to view the facts in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Therefore, we assume the following facts to be true.
McElwee and plaintiff were friends. On January 1, 1996, when the incident occurred McElwee was 18 years old and plaintiff was 16 years old. They had known each other for two years. On the evening in question, plaintiff made arrangements with McElwee to drive him to a female friend's home. Plaintiff obtained directions from his friend. McElwee independently obtained directions when he telephoned plaintiff's friend to ensure that there would be a date for him at her home. After comparing the directions and seeing that they were identical, McElwee disposed of his copy and relied on plaintiff's copy.
When the two young men began their trip to South Orange, McElwee proceeded on Stuyvesant Avenue, which runs from the center of Union to the Irvington border. McElwee then came to a fork in the road at which point the two began to argue over which way to turn. According to plaintiff, "By the time we had recalled what the street was it was too late, he [defendant] had gone into a bad neighborhood."
After the two acknowledged they were "lost," plaintiff asked McElwee to pull over so he could call his friend for further directions. At about 7:30 p.m. McElwee pulled into a parking lot. On the right of the lot was a McDonalds restaurant and across the street was a food store. There were people coming and going from McDonalds, and there were people hanging out in front of the food store.
Plaintiff got out of the car and called his friend from a payphone. His friend informed him that they were in a "bad section" of Irvington/Newark. Plaintiff obtained directions and walked back toward the car. McElwee already had exited the vehicle and met plaintiff on his way back to the car. The two then entered the car, with plaintiff telling McElwee to leave right away because there were "drug dealers and stuff" in the area.
Shortly thereafter, they noticed a man approaching the car from behind. Plaintiff stated that this made him "nervous." Plaintiff said to McElwee, "Go, just go!" However, McElwee got "nervous" and stopped the car because he wanted to see what the man wanted.
At this point, McElwee got out of the car and approached the man. The two introduced themselves and the man said he could get them to their South Orange destination in exchange for a ride. McElwee then returned to the car and asked plaintiff what he thought of the man's proposal. Plaintiff responded, "No don't. I just found out where we are, don't let this guy in the car." McElwee replied, "What could it hurt?" Plaintiff countered, "It could hurt a lot. We're not in Union ... we don't know what could happen.... This place is worse than New York." McElwee replied, "Well, it's my car. If I want him in the car, I need the directions." McElwee let the man into the car.
Shortly after McElwee drove away, the man put his right arm around plaintiff, and put a gun to plaintiff's head with his left arm. The man told McElwee to pull over. The man asked for money and also demanded that plaintiff turn over the gold necklace that he was wearing. While plaintiff was in the process of handing over the necklace, the man shot him. The bullet went through plaintiff's forearm and into the left side of his back. The man then exited the vehicle and told the boys to leave. The boys drove away, but stopped shortly thereafter to call an ambulance.
Although McElwee moved for summary judgment based on the "sudden emergency doctrine," the motion judge sua sponte *832 raised the issue of duty. The judge determined that McElwee did not owe a duty to plaintiff because the criminal act of the gunman was not reasonably foreseeable. Plaintiff's motion for reconsideration was denied.
In New Jersey, it is now well-settled that there is no bright line rule that determines when one owes a legal duty to prevent a risk of harm to another. "Duty" is a fluid concept. See Hopkins v. Fox and Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110. (1993). Whether a legal duty is owed and the scope of that duty is generally a matter of law for the courts to decide on a case by case basis. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996); Kelly v. Gwinnell, 96 N.J. 538, 552, 476 A.2d 1219 (1984). The imposition of a duty depends on the interplay of many factors, including: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise control; (4) the public interest in the proposed solution; and, most importantly; (5) the objective foreseeability of harm. Alloway v. Bradlees, Inc., 157 N.J. 221, 230, 723 A.2d 960 (1999). In deciding whether to impose a duty, these factors must be "identified, weighed and balanced" by the court. Ibid. (citations omitted). The court's decision in this regard must be "fact specific and principled." Ibid. (citations omitted).
Ultimately, Supreme Court cases repeatedly emphasize that the question of whether a duty exists is one of "fairness" and "public policy." Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; Accord Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502, 694 A.2d 1017 (1997). Thus, "the essential question is whether `the plaintiff's interests are entitled to legal protection against the defendant's conduct.' Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct." Wytupeck v. Camden, 25 N.J. 450, 461-62, 136 A.2d 887 (1957) (quoting Prosser on Torts, § 36 (2d ed.)).
Of all the factors noted above, "foreseeability" has generally received the greatest attention in the case law. The question of whether harm to another is "foreseeable" is capable of objective analysis and is based on the "totality of circumstances." Clohesy, supra, 149 N.J. at 508-509, 694 A.2d 1017. See J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998) (noting that foreseeability of harm is the "foundational" element in the duty analysis and is "susceptible to objective analysis"); Butler v. Acme Markets, Inc., 89 N.J. 270, 276, 445 A.2d 1141 (1982) (stating that foreseeability of criminal acts of third parties is the "crucial" factor). "The totality of circumstances standard [in determining foreseeability] encompasses all the factors a reasonably prudent person would consider." Clohesy, supra, 149 N.J. at 508, 694 A.2d 1017.
Applying the above factors to this case, it is apparent to us that fairness permits the imposition of a duty under these circumstances. The relationship of driver and passenger has long been recognized in the law as one in which the driver, by reason of his or her control exercised over the motor vehicle, is required to exercise reasonable care for the safety of his or her passengers. Cohen v. Kaminetsky, 36 N.J. 276, 283-84, 176 A.2d 483 (1961). Likewise, it cannot be gainsaid that every teenager of driving age has been admonished by his or her parent not to pick up hitchhikers or to give rides to strangers.
Undoubtedly, the wisdom of this admonishment is derived from a commonly held belief, grounded in experience, that danger lurks when strangers enter vehicles. Further, logic dictates that the foreseeable danger arising from a breach of this admonishment stems from intentional misconduct at the hands of a stranger rather than from negligent conduct. Therefore, common experience informs us that inherent in a driver's decision to accede to the *833 request of a stranger for a ride, is the foreseeable risk of serious harm resulting from the stranger's intentional misconduct. Obviously, if the driver of the vehicle is at a risk of danger, the same risk exists for other occupants of the vehicle. In this case, if McElwee was at risk of harm, plaintiff was at risk of harm.
In addition, the law does not require the defendant to foresee the exact manner in which the harm may be manifested. The plaintiff need not prove that McElwee should have foreseen that the assailant would use a gun to harm him. See Clohesy, supra, 149 N.J. at 514-15, 694 A.2d 1017 (where the court held that as long as some foreseeable risk of harm was presented from a third person's intentional conduct, "it was foreseeable that over the course of time an individual would enter the parking lot and assault a Foodtown customer. Theft offenses frequently escalate into more violent crimes"). Lastly, because it does not appear to us highly extraordinary that a stranger who invites himself into a motor vehicle would use force on its occupants, if McElwee is found to be negligent in permitting the stranger to enter the vehicle, his negligence could be found to be a proximate cause of plaintiff's injuries. See J.S., supra, 155 N.J. at 352, 714 A.2d 924 (holding that wife's negligence in failing to warn of her husband's sexual abuse could be found to be a proximate cause of the plaintiff children's physical and emotional injuries despite husband's criminal conduct).
We recognize that McElwee's version of the events differs somewhat from plaintiff's version. For example, McElwee stated that both boys were out of the car making the phone call when a stranger, who identified himself as "Victoria" approached them and offered to help them get back on track. He believed, although he could not be certain, that plaintiff agreed to the offer. Victoria entered the car without any express invitation. The differences, however, even if viewed as true by a jury, might affect the question of negligence but would not change our view as to the nature of McElwee's duty. Irrespective of whether plaintiff acceded to the stranger's offer to help them find their way, McElwee conceded that he never trusted anyone from the "streets." In addition, McElwee had "a lot of doubts" about the situation that was developing. At the end of the day, it was McElwee who was in control of the vehicle, and it was he who admitted knowledge of a risk by permitting Victoria to enter it.
In conclusion, we hold that a duty exists under the circumstances of this case. We also hold that a jury question is presented as to whether, under the circumstances of the case as the jury finds them to be true, McElwee was negligent in permitting the assailant to enter the vehicle. If McElwee is found to have been negligent, the jury must also decide whether his negligence was a proximate cause of plaintiff's injuries.
Reversed and remanded.
NOTES
[1] The status of Christine McElwee, Christine Hogan, and James Hogan is not readily apparent from the record. In any event, plaintiff's brief does not address their liability. Accordingly, we affirm the judgment in their favor.