**William GRDINICH, Plaintiff,**

v.

**BRADLEES, Defendant.**

**No. Civ. 98–2968 (SAS).**

United States District Court,
S.D. New York.

April 19, 1999.

Adam M. Hurwitz, Thomas P. Kinney, Silverstein & Hurwitz, P.C., New York City, for plaintiff.

Michael Sclafani, Reardon & Sclafani, P.C., Yonkers, NY, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On November 24, 1996, plaintiff William Grdinich was shopping for an ironing board at defendant Bradlees' store in Yonkers, New York. *See* Deposition of William Grdinich ("Grdinich Dep."), dated June 23, 1998, Attached to the Declaration of Thomas P. Kinney ("Kinney Decl."), plaintiff's attorney, Ex. A at 9–10, 16, 25. Plaintiff claims that when he took an ironing board from its display case, approximately twenty boards fell toward him, injuring his left hand. Grdinich then sued Bradlees in this Court based on diversity of citizenship.

Plaintiff has retained William Torphy as a liability expert to opine at trial that Bradlees

either ignored or failed to follow "industry guidelines applicable to merchandise displays for self-service department stores." *See* Torphy Report, Kenny Decl., Ex. K. The Bradlees display contained four to five adjacent rows of ironing boards stacked five or six boards deep. The bottom of the display case featured a plastic lip. *See* Grdinich Dep. at 24. Photographs reveal that the boards were not restrained by any devices above the plastic lip that might have prevented the boards from falling forward. *See* Kinney Decl., Ex. C. Bradlees now moves to preclude Torphy's testimony, pursuant to Rule 702 of the Federal Rules of Evidence ("Fed.R.Evid."), *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and on the ground that plaintiff's expert disclosures were untimely.

## I. Timeliness of Plaintiff's Disclosure

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), parties are required to disclose the identity of any expert witness and provide a written report prepared by the witness "at the times and in the sequence directed by the court." Although expert reports in this litigation were due on October 15, 1998, Grdinich did not serve his expert disclosure on Bradlees until December 3, 1998, three days after the discovery cut-off date. *See* Scheduling Order, Kenney Decl., Ex. E. Bradlees alleges that it was prejudiced by Grdinich's failure to comply with Rule 26(a)(2) because, after concluding that Grdinich had no intention of retaining an expert, Bradlees took no steps to retain its own.

■ Rule 37(c)(1) provides, in pertinent part:

A party that without *substantial justification* fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed.R.Civ.P. 37(c)(1) (emphasis added). This rule provides for the automatic exclusion of a witness who was not disclosed despite a party's duty to disclose. *See* Advisory Committee Notes, 146 F.R.D. 682, 691 (1993). However, the impact of this exclusion is softened if the offending party's failure to disclose was "substantially justified". Furthermore, even if the failure to disclose was not substantially justified, the exclusion will not apply if the failure was harmless. Courts have held that imposition of Rule 37 sanctions is a "drastic remedy" that should only be applied "in those rare cases where a party's conduct represents *flagrant bad faith* and *callous disregard* of the Federal Rules of Civil Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y.1995) (emphasis added); *see also McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584 (W.D.N.Y. 1995); *Sterling v. Interlake Ind., Inc.*, 154 F.R.D. 579 (E.D.N.Y.1994).

■ Grdinich asserts that he was substantially justified in waiting until after mediation efforts failed before hiring an expert. Mediation sessions occurred on September 25 and November 6, 1998. While court-sponsored mediation does not ordinarily delay or suspend a discovery Scheduling Order, plaintiff's month and a half-long delay simply does not exhibit the "flagrant bad faith" or "callous disregard" required for preclusion. *See Hinton*, 162 F.R.D. at 439. Due to ongoing settlement negotiations, plaintiff appears to have acted justifiably and cost-effectively in temporarily suspending expert preparation. *See id.* (plaintiff justified in suspending medical expert discovery during settlement negotiations and pending defendant's summary judgment motion); *compare Novomoskovsk Joint Stock Co. v. Revson*, No. 95 Civ. 5399, 1998 WL 804712 (S.D.N.Y. Nov. 12, 1998)(expert testimony precluded when plaintiff applied for leave to designate a new expert *one year* after deadline to designate experts and less than seven weeks before trial). Any harm to the defendant could be remedied by permitting Bradlees additional time to name its own expert and to depose Torphy. Accordingly, Bradlees' motion to preclude based on the untimely disclosure is denied.

## II. Admissibility of Expert Testimony

Torphy's four paragraph Expert Report concludes that Bradlees failed to take basic precautions to prevent its ironing board display from falling forward. *See* Torphy Re-

port, Kinney Decl., Ex. K. Torphy's findings were based on his review of photographs, deposition testimony, documents provided by Bradlees and Torphy's expertise and knowledge of industry standards in the area of display case designing, planning, construction and safety. *See id.* Torphy neither interviewed the plaintiff, nor did he view the actual ironing board display at the Yonkers store.

## A. Expert's Qualifications

Torphy received his B.S. from Boston College in 1952 and his J.D. from the New England School of Law in 1956. From 1956 to 1960, Torphy was an Assistant Sales Manager at the Gillette Company where he handled retail fixturing and merchandise displays. *See* Torphy Curriculum Vitae, Kinney Decl., Ex. I. During the 1960s, Torphy was the Assistant to the Real Estate Director for the Mid–Atlantic and New England Region of F.W. Woolworth Company where he analyzed demographics, site locations and negotiated leases for major shopping centers. From 1970 to 1983, Torphy was K–Mart's Director of Real Estate for the Eastern United States where he was responsible for, among other things, site selection, shopping center design, premises safety, maintenance and security. Torphy acknowledged that during his thirteen years at K–Mart, his only experience in merchandise stocking entailed drawing up guidelines for K–Mart licensees operating retail food stores. *See* Deposition of William Torphy ("Torphy Dep."), dated December 21, 1998, Kinney Decl., Ex. G, at 21. Since 1983, Torphy has been a commercial real estate consultant, advising clients on premises liability, site design and standards of care and safety. *See id.,* at 9–10, 32–33, 38–41. Torphy maintains that he has been

retained by counsel, presumably as an expert, in approximately 100 cases, deposed in approximately 50 cases and has testified at approximately 20 trials.[1] *See id.* at 57–59; *see also* list of recent testimony given by William Torphy, Kinney Decl., Ex. J. Torphy estimates that he has been retained by plaintiffs in 85% of the cases. *See* Torphy Dep., at 58. He recalls being involved in two personal injury cases involving falling ironing boards. *See id.* at 35.

## B. Legal Standard for Admissibility of Expert Testimony

■ Rule 702 of the Federal Rules of Evidence provides that:

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court set forth a list of specific factors a court should consider when deciding upon the admissibility of scientific expert testimony. Under the *Daubert* test, the court, in a "gate-keeping" capacity, assesses the relevance and reliability of expert testimony by considering, among other factors: 1) whether the expert's theory or technique can be, and has been, tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory has been generally accepted. *See Daubert,* 509 U.S. at 591–93, 113 S.Ct. 2786. In considering these factors, "[t]he focus . . .

---

1. Based on a review of Torphy's deposition, the Court cannot determine what was his area of expertise in the cases in which he was retained or in which he testified. A Westlaw search of all state and federal cases reported since 1944 reveals only one written opinion in which a court relied upon Torphy's testimony. There, plaintiff, an executrix of a supermarket customer who had been abducted from the supermarket parking lot and murdered, presented a report prepared by Torphy, "a commercial facility design, management, and security expert." *Clohesy v. Food Circus,* 149 N.J. 496, 504, 694 A.2d 1017 (1997).

After evaluating the security of the supermarket, Torphy concluded "that its failure to provide any security for its parking lot deviated from the industry's standard of care and proximately caused [plaintiff's] death." *See id.* Although the New Jersey trial court granted defendant's motion for summary judgment, and the Appellate Division affirmed, the State Supreme Court reversed and remanded, finding that the supermarket had a legal duty to a customer to provide parking lot security. *See id.,* at 519–520, 694 A.2d 1017.

must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 595, 113 S.Ct. 2786.

■ Recently, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999),[2] the Supreme Court held that *Daubert's* general holding "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 119 S.Ct. at 1171. In addition, the Court reiterated that the test of reliability is "flexible", and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts. 119 S.Ct. at 1171.

## C. Discussion

Ultimately, this Court must decide "whether this particular expert [has] sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Kumho*, 119 S.Ct. at 1178 (quoting 4 J. McLaughlin, *Weinstein's Federal Evidence*, ¶ 702.05[1], 702–33 (2d ed 1998)). It appears that none of the *Daubert* factors, including that of "general acceptance" in the relevant expert community, indicate that Torphy's testimony would be reliable. In addition, the Court's own analysis has revealed no countervailing factors operating in favor of admissibility which could outweigh those identified in *Daubert*, nor have the parties identified any such factors in their briefs. *See Kumho*, 119 S.Ct. at 1178–79. Keeping in mind the Court's "gate-keeping" function, I find Torphy's testimony should be precluded as it is neither reliable nor relevant.

### 1. Reliability

■ In reaching his conclusion, Torphy claims that he relied, in part, on "industry standards" and guidelines that are part of training and safety manuals that apply generally to retail stores. Without Torphy's testimony, Grdinich argues, jurors would be unfamiliar with department store display safety standards. The flaw in this theory, however, is that there really are no so-called "industry standards".

As evidence of these alleged industry standards, plaintiff provides the Court with excerpts from a Wal–Mart "Safety Handbook". *See* Kinney Decl., Ex. M. The manual provides general instructions such as: "stack merchandise in a stable manner so it won't fall;" "bar lock ties and security ties can be used to secure displays;" "fencing can reduce the chances of merchandise falling;" and "snap rails can help prevent 'fallovers'". *See id.* The Wal–Mart Guidelines do not specify how to stack or safely display ironing boards, but more generally discuss the display of "heavy" items. In addition, Torphy reports that he once saw ironing boards displayed in "a bin type arrangement with metal strapping" in a K–Mart store in Freehold, New Jersey. *See* Torphy Dep., at 69. However, this may be unusual. Photographs of ironing board displays at two K–Mart stores reveal no restraining devices other than a plexi-lip or bracket at the bottom of the display. *See* Declaration of Michael Sclafani ("Sclafani Decl."), defendant's attorney, Ex. J. In addition, photographs from Caldors, Sears and The Home Place do not show the use of any restraining device. *See id.*, Exs. K, L, M.

While individual companies in the department store industry, such as Wal–Mart, might provide general guidelines for displaying merchandise, Torphy was not aware of any industry trade group that provides guidelines on displaying or stacking merchandise or any written industry standards on how to display ironing boards.[3] *See* Torphy Dep., at 43, 45. In fact, nothing in Torphy's deposition or expert report indicates that industry standards for the display of merchandise actually exist, other than general common-sense guidelines, such as

2. The Supreme Court decided *Kumho Tire* after the parties had submitted their briefs in this motion.

3. After Torphy's deposition, plaintiff produced a copy of the National Safety Council's guidelines for "Falls on Floors" and implied that Torphy had relied on the document. A review of this document reveals that it is not at all relevant to the stacking or display of ironing boards. *See* "Falls on Floors," Sclafani Decl., Ex. O.

stacking heavy items on lower shelves.[4] Without "industry standards" to rely upon, Torphy seems to base his conclusions on his own authority. Because "knowledge connotes more than subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786, there is no reliable foundation for Torphy's expert opinion.[5] Therefore, I find that Torphy does not have sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.

### 2. Relevancy

■ Expert testimony is not admissible when it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir.1989) (jury did not need special training or expertise to decide whether dimly-lit, icy train platform with trash on it was a "safe place"). Here, a juror needs no special training or expertise to understand whether ironing boards are safely displayed. In fact, Torphy's own admissions during his deposition reveal that no specialized knowledge is required—as he bases his opinion on nonexistent industry standards and his limited professional experience in the field of merchandise display safety. *See* Torphy Rep., Kinney Decl., Ex. I. Therefore, I find plaintiff's expert witness testimony inadmissible on the grounds that it is neither reliable nor relevant.

4. Torphy infers from a Bradlees' "planogram" that the store violated industry practice by not incorporating safety measures into its store diagram. According to Torphy it would not be unusual for store headquarters to issue a planogram instructing personnel to stock heavy merchandise on lower shelves. However, Torphy admits that his assumption of what stores normally include in their planograms is not based on any industry standard. *See* Torphy Dep., at 55–57.

5. Bradlees charges that Torphy's testimony is also unreliable due to his "bad faith" in allegedly misrepresenting prior work experience on his resume and misdescribing a K–Mart ironing board display in Freehold, New Jersey. I disagree. First, Torphy acknowledged in his affidavit that his resume would have been clearer had he listed his experience as a member of the "K–Mart Store Design Committee" between 1975 and 1983 under the category pertaining to his

### III. Fees

Bradlees has already paid plaintiff's expert $325 for his time during the deposition, but has not reimbursed plaintiff for the time Torphy spent preparing for or traveling to the deposition. Grdinich maintains that defendant should pay an additional $600—Torphy's rate of $200 per hour for a half hour of preparation and two and a half hours of travel time. Rule 26 provides that "[u]nless manifest injustice would result, ... the court shall require that the party seeking discovery pay the expert a *reasonable fee* for time spent in responding to discovery." Fed. R.Civ.P. 26(b)(4)(C) (emphasis added). The Rule "permits recovery of fees for an expert's travel time and preparation time in connection with a deposition, along with the expert's out-of-pocket expenses." *Bonner v. American Airlines, Inc.*, No. 96 Civ. 4762, 1997 WL 802894, at * 1 (S.D.N.Y. Dec. 31, 1997). "Compensating an expert for his time spent in deposition is mandatory under the rule to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 646 (E.D.N.Y.1997).

■ In determining whether an expert fee request is "reasonable," courts consider: 1) the expert's area of expertise; 2) the education and training that is required to provide the expert insight that is sought; 3) the prevailing rates for other comparably respected available experts; 4) the nature, quality and complexity of the discovery re-

employment at K–Mart, rather than under the category marked "Experience, 1983 to the present". *See* Affidavit of William Torphy, dated January 22, 1999, Kinney Decl., at ¶ 3. Torphy also acknowledged this error at his deposition. *See* Torphy Dep. at 25–27. This mistake is more akin to a typographical error, than "bad faith."

As for the discrepancy between Torphy's description of a K–Mart ironing board display he saw in Freehold, New Jersey and a photograph taken by defendant in that same store, Torphy has explained that he viewed the display sometime before his deposition of December 21, 1998. The fact that defendant's photographer captured a different display arrangement on January 11, 1999, does not imply "bad faith" on Torphy's behalf. Department store displays are frequently altered, especially during the holiday season. *See id.* at 45–46, 69–70.

sponses provided; 5) the cost of living in the particular geographic area; 6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26 (*see, e.g., Mathis v. NYNEX*, 165 F.R.D. 23, 24 (E.D.N.Y.1996); *Goldwater v. Postmaster Gen'l of the United States*, 136 F.R.D. 337, 340 (D.Conn.1991)); 7) the fee being charged by the expert to the party who retained him; and 8) fees traditionally charged by the expert in similar matters. *See Mathis*, 165 F.R.D. at 25. None of these factors are dispositive.

Applying the foregoing factors, I find that Torphy's unrelated education and training, the questionable quality of the discovery responses and the lack of complexity of the issues involved warrant some reduction in Torphy's fees. I also agree with Bradlees that it is unreasonable to charge the same rate for travel time as charged for testifying. *See, e.g., Bonner*, 1997 WL 802894, at *1 (travel rate of $80/hour as opposed to $155/hour deposition rate found reasonable). Moreover, Torphy advised plaintiff's counsel that his trip from his home in Colt's Neck, New Jersey to Manhattan was only one hour. Therefore, Bradlees is directed to pay a reduced travel rate of $100/hour to compensate Torphy for two hours of travel time. Torphy's request for a half an hour of preparation time, however, is reasonable as Torphy's preparation time may have facilitated the deposition process for defendant. Accordingly, within ten business days of the date of this Opinion and Order, defendant is directed to reimburse plaintiff an additional $300 ($100 for a half an hour of preparation and $100 for each of the two hours Torphy traveled to the deposition).

## IV. Conclusion

For the foregoing reasons, Bradlees' motion to preclude plaintiff's expert testimony is granted. Plaintiff's cross-motion for discovery expenses is granted in part. A conference in this matter is scheduled for May 3, 1999 at 4:30 p.m.

SO ORDERED.