Victoria NOOK, Administratrix for the estate of Scott Nook, Deceased, Plaintiff,

v.

**LONG ISLAND RAILROAD COMPANY, Defendant.**

**No. 99CIV.5991LTSRLE.**

United States District Court, S.D. New York.

March 20, 2002.

Michael Flynn, Elkind, Flynn & Maurer, P.C., Garden City, NY, for Plaintiff.

William J. Blumenschein, Michael R. Ambrecht, LIRR Law Dept., Jamaica, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

Defendant Long Island Railroad Company ("Defendant") moves in limine, pursuant to Federal Rules of Evidence 104(a) and 702, to exclude from the evidence to be admitted at trial the testimony of Robert Leighton ("Leighton"), an industrial hygienist who has been designated by Plaintiff Victoria Nook, Administratrix of the Estate of Scott Nook, Deceased ("Plaintiff"), as an expert witness. This case involves a claim for the conscious pain and suffering and wrongful death of Scott Nook, a Long Island Railroad Company employee, who died on the job on August 2, 1996. Plaintiff contends that decedent was engaged in drilling into concrete that contained silica, that Defendant failed to provide decedent with safe working conditions, and that his death, attributed by the New York City Medical Examiner to "intramyocardial arteriosclerosis with fibrosis," was a result of this work activity. Leighton's report, dated April 27, 2001 (the "Report")[1], sets forth his opinion that the decedent was not equipped with an appropriate respiratory device and was inadequately trained to

---

1. The Report is annexed to Defendant's Notice of Motion as Exhibit A.

recognize the hazards of working at Defendant's site. Leighton's Report also asserts that, if the silica dust exposure at the site was in fact "extremely high," working under such conditions "without proper respiratory protection would have exposed [decedent] to excessive dust and placed an additional burden on his respiratory system" and that this burden "could then affect his cardiovascular system." Report at 4. The Report acknowledges that the expert "do[es] not know if the respirators worn were adequate for this work assignment." *Id.* at 3. The Court has considered thoroughly all submissions and arguments related to this motion and the decision here rendered reflects such consideration. For the following reasons, Defendant's motion in limine is granted.

Defendant seeks to bar Leighton's testimony, asserting that Leighton's opinion, as detailed in the Report, fails to meet the standards for admissibility of scientific testimony established by Federal Rule of Evidence 702 and as elucidated by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ Rule 702 reads:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702 (West 2002). The Rule requires that the trial court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786. "Its overarching subject is the scientific [or technical] validity and thus the evidentiary relevance and reliability— of the principles that underlie a proposed submission." *Id.* at 594–95, 113 S.Ct. 2786. The proponent of the evidence must demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific or technical reliability by a preponderance of the proof. *See Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *Falise v. American Tobacco Company,* 107 F.Supp.2d. 200, 203 (E.D.N.Y.2000). Matters of exclusion or inclusion of evidence pursuant to Rule 702 are left to the broad discretion of the trial court. *See Zuchowicz v. United States,* 140 F.3d 381, 386 (2d Cir.1998).

■ Expert testimony should assist the jury in understanding the evidence or determining a fact in issue. *See United States v. DiDomenico,* 985 F.2d 1159, 1163 (2d Cir.1993). In assessing admissibility, the Court must determine whether the proffered expert testimony is relevant, that is, whether it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R.Evid. 401 (West 2002), *see Daubert,* 509 U.S. at 587, 113 S.Ct. 2786, and whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered, *id.* at 597, 113 S.Ct. 2786. Indeed, the Court must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.*

at 589, 113 S.Ct. 2786; *see Brooks v. Outboard Marine Corp.,* 234 F.3d 89, 91 (2d Cir.2000).

The *Daubert* Court identified several factors to be considered in determining whether a proposed submission is sufficiently reliable under Rule 702. These include whether the theory or technique offered can be tested; whether it has been subjected to peer review and publication; what the known or potential rate of error is; and whether it is generally accepted in the relevant scientific community. *Daubert,* 509 U.S. at 592–595, 113 S.Ct. 2786. Whether the proffered testimony is scientific or technical in nature, the Court must "consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167.

■ Leighton's methodology lacks scientific or technical reliability. None of his opinion is based on testing or objective data regarding the actual conditions under which decedent allegedly worked on the date in question. Indeed, although Leighton tested the cement material for its silica content, he does not purport to explain how the quantity of silica in the cement affected the quantity of silica in the air at the time of the incident in question and admits that "exposure air monitoring for airborne silica dust was not performed." Report at 4. Nor does Leighton proffer any specific industry standards for silica exposure or specific work practices. He speaks, rather, of "potential for high dust levels," conditions under which certain types of respirators would be required (while acknowledging that "we do not know if the respirators worn were adequate for this work assignment"), and a "commonly used ... engineering control ... [, t]he lack of [which] could lead to excessive [silica and dust] exposures." *See*

Report at 2–4. "Because 'knowledge connotes more than subjective belief or unsupported speculation,' ... there is no reliable foundation for [Leighton's] expert opinion." *Grdinich v. Bradlees,* 187 F.R.D. 77, 82 (S.D.N.Y.1999) (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786). "Proposed testimony must be supported by appropriate validation— i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786.

A brief review of the *Daubert* factors makes it clear that the evidence proffered here lacks the requisite evidentiary reliability. No data, testing methodology or empirical evidence is offered to support Leighton's conclusions. Indeed, most of the conclusions are phrased in an entirely speculative manner— Leighton opines, without proffering any specific information as to actual or permissible exposure levels— as to alternative work practices and possible health ramifications of possible exposure to "excessive" or "high" amounts of silica and dust. The Report provides no basis for determining that Leighton's hypotheses can be tested. *Cf. Daubert,* 509 U.S. at 593, 113 S.Ct. 2786. Nor does the Report cite any published authority in support of its recommendations and conclusions, much less proffer any evidence of peer review of the causal theories or recommended workplace practices. *Cf. id.* Standards and error rates are impossible to assess based on the information set forth in the Report (*cf.id.*) and there is no information proffered from which the Court could gauge general acceptance of Leighton's methodology (*cf.id.*). The proffer thus fails all of the reliability measures outlined by the Supreme Court in *Daubert.*

Moreover, Leighton's opinion on the issue of causation of the injury (specifically

his statement that "without proper respiratory protection [working under possibly 'extremely high' dust conditions] would have exposed Scott Nook to excessive dust and placed an additional burden on his respiratory system, which *could* then affect his cardiovascular system" (Report at 5; emphasis supplied)) is wholly speculative and conclusory. Nor is there any proffer of background indicating that Leighton is qualified to deliver a medical opinion as to the cardiovascular effects of dust exposure. While Leighton may be considered an expert in his field as an industrial hygienist, Plaintiff has offered no evidence of his qualifications to make medical conclusions as to how the assumed contamination of the environment affected decedent's health. Plaintiff has thus failed to establish that the proffered testimony is sufficiently reliable as a technical or scientific matter to warrant its admission pursuant to Rule 702.

In determining relevance, the Court must decide "whether this particular expert [has] sufficient knowledge to assist the jurors 'in deciding the particular issues in the case.'" *Kumho Tire*, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (quoting 4 J. McLaughlin, Weinstein's Federal Evidence, ¶ 702.05[1], p. 702–33 (2d ed.1998)); *see Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. As noted above, Plaintiff claims that the decedent suffered pain and died due to hazardous work conditions and unsafe methods. The Report asserts that various work and safety measures would have been appropriate to guard against excessive levels of silica dust exposure, but is devoid of any information as to what constitutes an "excessive" level or as to whether the conditions at the time in question equaled or exceeded such a level. The Report does not address actual exposure, or the consequences of such exposure in this case. Leighton's opinion as to procedures that should have been followed does not provide a sufficient nexus to the facts in issue to qualify as helpful and relevant. Leighton's conclusions are speculative and therefore would not assist the trier of fact to understand the evidence or determine questions of fact.

■ Finally, in assessing the admissibility of expert opinion, the Court must weigh its probative value against the danger of unfair prejudice, confusion of the issues, misleading the jury, or waste of time. *See* Federal Rule of Evidence 403 (West 2002). Because the Report is based on assumptions and speculation, without objective scientific, technical or factual foundation as to the conditions that may have existed at the time of decedent's death, its probative value is substantially outweighed by its potential for unfair prejudice, confusion of the issues and misleading the jury.

For the foregoing reasons, Defendant's motion in limine is granted.

IT IS SO ORDERED.