PER CURIAM.*
_JjWe granted certiorari in this case to determine whether this retail seller has a duty to instruct buyers on the proper method of wearing and fitting bicycle helmets. For the reasons that follow, we conclude plaintiffs failed to establish any legal duty on the part of the retailer under the facts presented.
UNDERLYING FACTS AND PROCEDURAL HISTORY
This case arises from an incident in which six-year-old Blake Carrier was injured while riding his bicycle on a municipal tennis court on May 29, 2002. At the time of the accident, Blake was wearing a bicycle helmet his parents allegedly purchased from Sears, Roebuck and Co. (“Sears”) in December 2001.
Subsequently, Blake’s parents filed the instant suit against several defendants, including Sears.[1] Plaintiffs alleged Sears *1248 failed to properly fit the helmet and instruct them regarding its correct use.
| ¡.During discovery, plaintiffs produced an expert in the area of bicycle safety, James Green. In his deposition, Mr. Green stated he advised his clients to instruct their buyers on the proper use and fit of bicycle helmets. However, Mr. Green admitted he knew of no rules or laws requiring retailers to fit and instruct buyers of bicycle helmets. Mr. Green also explained his clients did not include Sears.
Sears filed both a motion in limine and a motion for summary judgment. In support of the motion in limine, Sears argued Mr. Green had no basis for his conclusion that retailers had a duty to fit and instruct buyers on the proper way to wear a bicycle helmet. In support of the motion for summary judgment, Sears argued retailers had no duty to buyers to fit and instruct on the proper use of bicycle helmets.
The district court granted Sears’ motion in limine to exclude Mr. Green’s testimony, and further granted Sears’ motion for summary judgment to dismiss all claims against Sears.
Plaintiffs appealed. On appeal, the court of appeal reversed, finding the district court erred in deciding the duty issue without first determining that the expert’s testimony was inadmissible under the factors identified in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and State v. Foret, 628 So.2d 1116 (La.1993). Accordingly, the court of appeal reversed the judgment granting the motion for summary judgment, and remanded the case to the district court for further proceedings. Carrier v. City of Amite, 08-1092 (La.App. 1 Cir. 2/13/09), 6 So.3d 893, writ denied, 09-919 (La.6/5/09), 9 So.3d 874.
|sOn remand, Sears re-urged both the motion in limine and the motion for summary judgment.[2] After a hearing, the district court denied Sears’ motions.
Sears sought supervisory review of this ruling. The court of appeal denied the writ, with one judge dissenting.
Upon Sears’ application, we granted cer-tiorari to consider the correctness of the district court’s decision. Carrier v. City of Amite, 10-0007 (La.3/12/10), 29 So.3d 1241.
DISCUSSION
The central question presented in this case is whether plaintiffs established a legal duty on the part of a retailer, such as Sears, to provide point-of-sale fitting instructions for bicycle helmets. In Lemann v. Essen Lane Daiquiris, Inc., 05-1095 at p. 8 (La.3/10/06), 923 So.2d 627, 633, we discussed the principles for determining the existence of a legal duty:
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Savings and Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993); *1249 Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. See Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. Faucheaux, 615 So.2d at 292; Perkins, 98-2081 at 22, 756 So.2d at 404.
|4In the instant case, plaintiffs do not identify any Louisiana statutory or jurisprudential authority which establishes a specific duty on the part of a retailer to fit bicycle helmets at the point of sale. Rather, plaintiffs seek to establish the existence of industry standards, including best practices, which they claim are relevant to determine whether a general duty is owed.
At this juncture, the parties dedicate a large part of their briefs to discussing whether the district court properly qualified Mr. Green as an expert on the subject of point-of-sale assistance in the sale of bicycle accessories. However, we find we need not resolve the question of Mr. Green’s qualifications under the unique facts presented, because we find that Mr. Green’s testimony, even if accepted, is insufficient to establish any factual basis for a duty on the part of Sears.
In his deposition, Mr. Green testified as follows:
They came out with a mass market approach to the Wal-Marts, etcetera, the Sears, the Lowe’s, whoever, that wanted to sell bikes, where they just wanted to get bikes and components out there into the commerce stream. They don’t provide point-of-sale service at all. You have, you have two families of retail organizations here. I maintained ever since I saw this developing some years ago that this mass market approach is not a good thing, that if you’re going to be a reputable retailer and I tell my clients that, if you’re going to be a reputable retailer, you must properly instruct at the point-of-sale from everything to how to operate a quick release, to how to fit a helmet, to never ride at night without a light on your bike, that kind of thing. It should be done at the point-of-sale, because bikes aren’t toys, they’re, they’re vehicles, [emphasis added]
Although Mr. Green testified the fitting of bicycle helmets “should” be done at the point of sale, he cited no authority for this proposition other than his own opinion. To the contrary, when asked whether any regulations existed requiring a |Bretailer to provide point-of-sale instructions on fitting bicycle helmets, Mr. Green testified, “[n]o, there’s nothing written up as a standard.”
Similarly, in response to Sears’ interrogatories, plaintiffs admitted Mr. Green did not rely on any formal requirements in support of his position:

INTERROGATORY NO. h

Please identify any and all standards, state or federal regulations, engineering, helmet manufacturer, department store and/or retail association periodicals, documents or guidelines which your expert, James M. Green, relies upon in opining that an industry standard existed in November, 2001 requiring that retailers of bicycle helmets must give point of sale instructions on proper sizing and fitting.

ANSWER TO INTERROGATORY NO. U:

There is no requirement but perfectly clear instructions provided by BHSI. Most reputable retailers do fit at the *1250 point of sale. These include REI, Performance Bicycle, Brooklyn Bike Shop, and any bike shop who belong to the Independent Bicycle Retailer Organization (now known as the National Bicycle Dealers Association (NBDA)). There are currently 6000 shops who belong to NBDA who employ helmet fit at point of sale (See attached documentation from NBDA). The NBDA also outlined the differences between a reputable shop and a mass merchant shop on the safety issue. (See attached documentation from NBDA). [emphasis in original]
A review of the documentation attached to plaintiffs’ answer to Interrogatory No. 4 reveals none of these documents set forth an industry standard which would mandate the fitting of bicycle helmets by a retailer at the point of sale. Moreover, Mr. Green admitted he did not know if Sears belonged to any bicycle safety industry group.
Under these circumstances, we must conclude Mr. Green’s testimony reflects his own personal opinion as to what a retailer should do, and is not based on any objective standards establishing what a retailer is required to do. Courts have held that experts may not rely on their own conclusions as authority in the absence of any objective support. See Grdinich v. Bradlees, 187 F.R.D. 77 (S.D.N.Y.1999) (holding | (¿he expert’s testimony was without foundation because “[w]ithout ‘industry standards’ to rely upon, [the expert] seems to base his conclusions on his own authority”). Thus, Mr. Green’s testimony does not establish the existence of any statutes, regulations, or industry standards which would support the finding of a duty on a retailer to fit bicycle helmets at the point of sale.
Additionally, as a matter of policy, we find no ground for recognizing such a duty based on general principles of tort law. In Meany v. Meany, 94-0251 at p. 6 (La.7/5/94), 639 So.2d 229, 233, we discussed the policy considerations to be taken into account in determining whether the law imposes a duty under particular facts:
When a plaintiff articulates a general rule or principle of law that protects his interests, it is necessary for the court to determine whether the rule is intended to protect him from the particular harm alleged, an inquiry which involves both the duty and causation elements of the negligence formulation. The court must make a policy determination in light of the unique facts of the case. Thus, the duty-risk analysis requires the court to take into account the conduct of each party as well as the particular circumstances of the case. Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiffs harm and the defendant’s conduct; the economic impact on society as well as the economic impact on similarly situated parties; the nature of the defendant’s activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving. Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1161 (La.1988); William E. Crow, The Anatomy of a Tort, 22 Loy. L.Rev. 903 (1976).
Applying these precepts to the instant case, we believe the policy considerations militate against the finding of any duty on the part of a retailer to provide point-of-sale fitting instructions for bicycle helmets. Under current societal norms, we do not believe it is reasonable to require mass- *1251 marketing retailers, such as Sears, to offer specialized point-of-sale advice on the thousands of products they |7sell. Rather, it is typically understood the consumer will ask for assistance, if it is required. In the instant case, the deposition testimony of Mr. Carrier establishes he never asked for any assistance at the time he purchased the helmet. Moreover, Mr. and Mrs. Carrier testified in their respective depositions that they believed the helmet, which was purchased as a Christmas gift for Blake, fit him properly; indeed, Mrs. Carrier testified it “was the best-fitting helmet [Blake] ever had.” Mrs. Carrier admitted she did not consult the instructions for fitting the helmet, and testified the instructions “probably got thrown away because we’ve had helmets before so we know how to use them.”[3] Under these circumstances, we find the responsibility to determine whether the helmet was properly fitted should rest with plaintiffs, not Sears.
In summary, we conclude that under the facts presented, there is no legal duty which would require Sears to provide fitting instructions for bicycle helmets at the point of sale. In the absence of any legal duty, Sears is entitled to summary judgment as a matter of law.
DECREE
For the reasons assigned, the judgment of the district court is reversed. The motion for summary judgment filed by Sears, Roebuck Co. is granted, and judgment is entered in its favor dismissing the claims of plaintiffs with prejudice.
REVERSED AND RENDERED.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. Also named as defendants were Bell Sports, Inc. (the manufacturer of the helmet), and the City of Amite (the owner of the tennis court). These defendants are not at issue for purposes of this opinion.

. On remand, Sears filed a pleading captioned "Motion for Hearing on Summary Judgment and Motion in Limine for Purposes of Issuance of Oral Reasons for Judgment, or Alternatively, Motion Requesting Written Reasons for Judgment.” Plaintiffs assert this motion was procedurally improper, because nothing in the court of appeal's opinion indicated the case was being remanded for entry of reasons. However, the record reveals Sears filed its original motion for summary judgment and motion in limine, as well as supporting exhibits, into the record at the hearing. Thus, despite the caption of the motion, we believe Sears expanded its pleadings to reurge its motion for summary judgment and motion in limine. See La.Code Civ. P. art. 1154.

. Interestingly, Mr. Green opined that the manufacturer’s instruction on use and fit in this case were "the best I’ve ever seen.” Nonetheless, Mr. Green stated he believed point-of-sale assistance on fit was necessary in part, because consumers frequently failed to consider the instructions on fit and use provided by manufacturers. However, Mr. Green conceded that such a duty did not exist in the case of mail-order purchases. This dichotomy in Mr. Green’s testimony reveals the fallacy in his conclusions. We believe the more consistent approach is to place the duty on the consumer to determine the product he or she purchased is appropriate for its intended use.