MOORE, J.
|! William and Nyava Carpenter appeal a summary judgment that dismissed their property damage claim against the Winn Parish Police Jury. For the reasons expressed, we affirm.

Factual Background

On Wednesday, August 23, 2006, a Winn Parish road crew was operating a road grader on Ed Carpenter Road near the Carpenters’ trailer home in the Village of Calvin. The crew accidentally cut the underground water and phone lines running to the Carpenters’ trailer. A crew member reported the damaged water line; the mayor of Calvin sent an employee to patch *266 the line on the afternoon of Friday, August 25. The employee could not restore full pressure until the glue dried; he intended to return the following Monday to “bleed” the line. The mayor did not say that anyone ever notified him about the damaged phone line.
Early on Saturday morning, August 26, the Carpenters’ trailer caught fire as a result of electrical problems unrelated to the road crew’s acts. The Carpenters were unable to phone the fire department (in rural Calvin, there is no cell phone reception), and the response was delayed about 30 minutes while Mr. Carpenter drove to the nearest phone. Mrs. Carpenter stayed at the trailer, but the water pressure was so low that she could not control the fire. The trailer was heavily damaged.
The Carpenters filed this suit against their homeowners’ insurer, Foremost Signature, and the Winn Parish Police Jury, alleging that their property damage would have been much less had the phone and water lines been functioning. Foremost Signature settled by paying the Carpenters the |2amount of the insurance claim, $55,047.55, and then intervened to assert a subrogation claim against the police jury.

The Motion for Summary Judgment

The police jury filed this motion for summary judgment, conceding that its road crew severed the lines but arguing that it did not cause the fire. It also argued that it fully discharged its obligation to the Carpenters. In support, it attached several documents:
• Affidavit of Cranford Jordan Jr., parish coordinator of Winn Parish Fire District # 3. He was notified of the fire at 12:47 a.m., arrived at the scene at 12:57, and had the fire under control by 5:01. His department does not rely on water lines or fire plugs, but uses tanker and pumper trucks; the lack of water supply to the scene had no effect on fighting this fire.
• Affidavit of Perry Holmes, road superintendent for the Winn Parish Police Jury. A grader operator reported the severed water line around 11 a.m. on August 23; Holmes relayed this information to the mayor. Village employees repaired the line around 1:30 p.m.; invoices showed the village wrote two checks on August 25 to David Carter for water line repair. There was no record that the Carpenters ever reported the severed phone line to the police jury.
• Printout from AT & T labeled “2006 History”; according to the police jury, this shows that the Carpenters never reported the damaged phone line to AT&T.
The police jury argued that it had no duty to protect against risks that cannot be reasonably foreseen or expected. Todd v. State, 96-3090 (La.9/9/97), 699 So.2d 35. Specifically, loss of electricity does not encompass the risk of a house fire from using candles, Davis v. Cindy Preferred, 99-1422 (La.App. 4 Cir. 9/8/99), 743 So.2d 772, and loss of phone service does not encompass the risk of being struck by a car while walking home, Many v. Palmer, 557 So.2d 973 (La.App. 4 Cir.1989), writ denied, 561 3So.2d 117 (1990).
The Carpenters opposed the motion, urging that various factual issues precluded summary judgment. They argued that they reported the severed lines to their police juror the day it happened, but the police jury took no steps to repair the water line; instead, the Village of Calvin did this, and service was not restored until after the fire. In support, they attached several documents:
• Affidavit of the Carpenters, stating that Winn Parish road crews knew *267 where the telephone cables were and had cut them several times before; the cables were “clearly marked.” Wednesday afternoon, they went to a neighbor’s house and called BellSouth to report the problem. The operator (named “Ben”) told them a line crew would repair it the following Monday (this occurred, after the fire). Later Wednesday afternoon they reported both the phone and the water lines to their police juror, John Edward Garrett, who came and looked at the damage Thursday morning. When the fire broke out early Saturday, Mr. Carpenter had to drive to a neighbor’s house 1 ½ miles away to report it; Ms. Carpenter tried to douse the flames, but there was no water pressure.
• Affidavit of Robert Wheeler, a village employee. The mayor called him to Ed Carpenter Road on August 23 to repair the water line. Wheeler and another employee had to order parts; they returned on Friday and repaired the line, but could not run full pressure through it until the glue had dried. They intended to return and finish on Saturday. Until that time, little if any pressure came through the line.
• Affidavit of David Carter, the worker who accompanied Wheeler to the broken water line on Wednesday and Friday; he mostly corroborated Wheeler, but said they intended to “bleed” the line the following Monday, not Saturday.
• Affidavit of Bob Carpenter, the mayor of Calvin, saying it was not Perry Holmes, the road superintendent, who reported the damaged water line, but William Carpenter, the plaintiff. Also, his employees did not “bleed” the line on Friday afternoon. He did not mention the phone line.
14* Supplemental affidavit of Cranford Jordan Jr., the Fire District #8 coordinator. Had the department been notified shortly after midnight, it would have arrived at the fire at approximately 12:17 a.m., “or 30 minutes before we actually arrived.” Although “obtaining water and the delay in the response time did not affect the outcome of the fire, the fact is a delay in notification will affect the outcome of a fire. I have no knowledge of a delay in notification.”
They also argued that Mang v. Palmer, supra, was inapposite, as that case presented an obvious, intervening cause of the plaintiffs harm; by contrast, the 57-min-ute delay in getting to the fire obviously affected the outcome of the fire.[1]

Action of the District Court

After a hearing limited to argument, the district court granted the police jury’s motion. In written reasons, the court found that the police jury did in fact sever the water and phone lines running to the Carpenters’ trailer. However, the police jury promptly notified the Village of Calvin, which began repairs, and this satisfied the police jury’s duty to the Carpenters. Further, there was no evidence that the Carpenters notified the police jury of the severed phone line. The court also found that the police jury did not cause the fire in the trailer, and cited with approval Cranford Jordan’s affidavit that “a delay in obtaining water or a delay in response time would not have affected the outcome of the fire.” The court therefore dismissed the Carpenters’ claim and Foremost Signature’s intervention.
*268 [ ⅝Applicable Law
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315 A. Louisiana uses the duty-risk analysis to determine whether to impose liability under Art. 2315. This analysis comprises five elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damage element). Lemann v. Essen Lane Daiquiris, Inc., 2005-1095 (La.3/10/06), p. 7, 923 So.2d 627, 633, and citations therein. In deciding whether to impose a duty in a given case, the court must make a policy decision in light of the unique facts and circumstances presented. Carrier v. City of Amite, 2010-0007 (La.10/19/10), p. 3, 50 So.3d 1247, 1249, and citations therein. The scope of the duty is ultimately a question of policy. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), p. 38, 16 So.3d 1065, 1092-1093, and citations therein. A risk may be outside the scope of a duty when the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. Id. Rules of conduct are designed to protect some persons under some circumstances from some risks. Wex Malone, Ruminations on Cause-in-Fact, 9 Stan. L.Rev. 60 lfi(1956). The requirement of legal cause prevents the imposition of liability “in an indeterminate amount for an indeterminate time to an indeterminate class.” PPG Industries Inc. v. Bean Dredging, 447 So.2d 1058 (1984), 1061, and citations therein.
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Adams v. JPD Energy Inc., 45,420 (La.App. 2 Cir. 8/11/10), 46 So.3d 751, writ denied, 2010-2052 (La.11/12/10), 49 So.3d 892. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Sensebe v. Canal Indem. Co., 2010-0703 (La.1/28/11), 58 So.3d 441. A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B.
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Sensebe v. Canal Indem. Co., supra; Tillman v. Eldridge, 44,460 (La. App. 2 Cir. 7/15/09), 17 So.3d 69.

Discussion

By their sole assignment of error, the Carpenters urge that the district court erred as a matter of law in granting summary judgment. As a general | -^principle, they contend that the police jury “had a duty to plaintiffs not to interrupt them telephone [and] water service.” They then allege that various factual issues precluded summary judgment. Citing their own affidavit, they argue that the Police Jury took no action to repair the severed water line, *269 but instead called on the Village of Calvin to do so; they also argue that “phone lines were cut and reported,” but not repaired. Citing Cranford Jordan’s supplemental affidavit, they argue that the 30-minute delay in notifying the fire department obviously affected the outcome of the fire. They conclude that the existence of the legal duty, and the various factual issues, all make the summary judgment improper.
We agree with the Carpenters’ basic premise that the police jury owed a duty not to interrupt their phone and water service. The police jury negligently severed both lines, obviously breaching a duty. PPG Industries Inc. v. Bean Dredging, supra.
This finding, however, does not end the analysis. The Carpenters must prove that the police jury’s conduct was a legal cause of the damages. Lemann v. Essen Lane Daiquiris, supra. This element of the duty-risk analysis requires proof of the scope of protection. The Carpenters have not cited, and this court has been unable to find, any statute or jurisprudence in which liability was imposed for remote consequences of interrupted phone or water service. In somewhat analogous cases, in fact, the courts have declined to find legal cause.
In PPG Industries v. Bean Dredging, supra, Bean was dredging the Calca-sieu River when it negligently damaged a Texaco natural gas pipeline | Rthat provided gas to PPG. PPG sued Bean to recover its added cost of obtaining fuel from an alternative source. Affirming the lower courts, the supreme court found no ease of association between Bean’s negligent conduct and PPG’s increased business expense, even though such a loss was conceivable. In Mang v. Palmer, supra, Hang’s son was unable to call home because the phone leased from AT & T was allegedly defective; he therefore started walking home and was struck and killed by a driver. The court held that AT & T’s duty to provide reliable phone service encompassed some risks but not the risk that someone unable to make a phone call would try to walk home and get hit by a car. In Antoine v. South Central Bell Tel. Co., 374 So.2d 117 (La.App. 4 Cir.1979), Ms. Antoine got sick and tried to phone her sister, but got a busy signal; the operator refused to interrupt the call because Ms. Antoine could not certify it was a “life or death situation”; exasperated that she could not get help, Ms. Antoine fainted, fell and injured herself. The Fourth Circuit affirmed the phone company’s motion for summary judgment, finding no breach of duty. In Davis v. Cindy Preferred, supra, Entergy failed to connect the electricity to Ms. Davis’s new apartment after she moved; because of the darkness, she lit some candles that set the apartment on fire and resulted in her son’s death. The court found that the lack of electricity was not a legal cause of the fatal fire.
While these cases are not completely factually apposite, they convince us that the relationship between the interruption of the Carpenters’ phone and water service and the property damage they sustained in the fire was too speculative or conjectural to support a finding of legal cause. The ^damage was a conceivable consequence of the police jury’s negligence, but not a reasonably foreseeable or anticipated one. Carrier v. City of Amite, supra; Rando v. Anco Insulations, supra;
Moreover, the summary judgment evidence shows that the police jury took reasonable steps to fix the damaged lines. The Winn Parish road supervisor called the mayor of Calvin to report the water line. There is no showing that this delegation of authority was illegal, unusual or needlessly delayed repairs. As for the *270 phone line, there is a minor factual dispute: the Carpenters testified that they pointed it out to them police juror, Mr. Garrett, while the road supervisor testified there was “no record” they ever reported it to the police jury.[2] However, accepting the Carpenters’ affidavit as true, we find that Ms. Carpenter phoned BellSouth on Wednesday afternoon and reported the outage. The operator, “Ben,” told her linemen would not be able to repair it until the following Monday. There is no evidence that the police jury could have fixed the phone line any faster than BellSouth.
In short, the record shows that the police jury negligently cut the underground water and phone lines to the Carpenters’ trailer. While this was a breach of the police jury’s duty not to interrupt their water and phone service, damages from a fire occurring three days later are not reasonably foreseeable consequences of the breach. We are unable to find the ease of association required by a duty-risk analysis.
|inOn this record, we find the district court did not err in granting the motion for summary judgment.

Conclusion

For the reasons expressed, the judgment is affirmed. All appellate costs are to be paid by the plaintiffs, William and Nyava Carpenter.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, DREW and MOORE, JJ.
Rehearing denied.

. The police jury filed a motion to strike portions of the Carpenters’ attachments as hearsay and speculation. The record shows no ruling on this, but neither side has challenged on appeal the court’s apparent denial of the motion.

. The police jury also argues that the printout from AT & T shows that nobody reported the phone outage to the phone company, but this court is reluctant to "interpret” the dense columns and code numbers without some expert input.