SEXTON, Judge Pro Tern.
11 Plaintiff, Doug Winn, appeals a summary judgment granted in favor of Defendant, the Department of Natural Resources, Office of Conservation (“the DNR”), dismissing with prejudice his claims against it arising out of the incorrect plugging of a gas well in which Mr. Winn owned the working interest. For the reasons stated herein, we affirm.

FACTS

Mr. Winn was the working interest owner of two gas wells in a particular field in Ouachita Parish. The two wells were producing a combined net payment per month to Mr. Winn of approximately $56.[1] One of the wells, the Lieber No. B-l, had been orphaned and was slated to be plugged by the DNR under the Abandoned Well Program. Gary Mott, an employee of the DNR, sought to physically locate the well in order to identify it for plugging. Apparently, the area where the wells are located is overgrown and neither of Mr. Winn’s wells was identified in any manner. Mr. Mott located what he believed to be the well-head tubing of the orphaned Lie-ber No. B-l well and directed codefendant *18 Separation Systems Consultants, Inc. (“SSCI”) to plug the identified well. SSCI was an independent contractor hired by the DNR to plug the well.
The well identified by Mr. Mott was plugged by SSCI on September 8, 2004. It was later determined that Mr. Mott had identified the wrong well to be plugged; it was Mr. Winn’s other well, Lieber No. 2, that was actually, mistakenly plugged. It is undisputed that the wrong well was plugged and 12that SSCI plugged the well in accordance with the directive of Mr. Mott of the DNR.
Mr. Winn became aware of a problem with Lieber No. B-l when he was advised that there was excessive air in the line and he began searching for the well to inspect it.[2] Mr. Winn had never physically visited either well site and had difficulty locating the well. Ultimately, several years later, with the use of a survey and GPS, Mr. Winn located the site of the Lieber No. B-1 and discovered that it had been plugged. Mr. Winn filed suit against the DNR, SSCI and the two owners of MC Gas, Inc., whom Mr. Winn had hired to oversee physical operation of the well. He sought damages for lost production and the cost of drilling a replacement well.
Mr. Winn survived exceptions of prescription due to the difficulty in finding the well and his reasonable and diligent attempts to locate it. While a writ to this court was pending on the prescription ruling, the DNR and SSCI filed motions for summary judgment. The DNR argued that Mr. Winn suffered no financial loss by the plugging. It submitted that there were no damages because the cost of plugging the well was greater than any production from the well.
Further, the only expert affidavit on damages was Petroleum Engineer J.E. Shell, who valued the plugged well for the DNR. Mr. Shell is an expert in oil and gas well valuation and attested that Mr. Winn’s damages were zero at best and that Mr. Winn may have actually experienced an economic | sgain by not having to pay for the plugging. SSCI adopted this argument and added that there was no negligence on its part as it did exactly what it was hired by the DNR to do — plug the well identified (albeit wrongly) by the DNR.
The trial court granted SSCI’s motion for summary judgment in a judgment dated July 27, 2001. It then granted the DNR’s motion for summary judgment in a separate judgment dated August 30, 2011. On September 29, 2011, Mr. Winn filed a motion for devolutive appeal of the August 30, 2011 judgment in favor of the DNR. No appeal was taken from the July 27, 2001 judgment in favor of SSCI.

DISCUSSION

Summary Judgment in favor of SSCI

As a threshold matter, we note that Mr. Winn presents arguments in his brief challenging the summary judgment in favor of the DNR and the summary judgment in favor of SSCI. His motion for appeal, however, speaks only to judgment in favor of the DNR and the order of appeal granted was for that judgment. An order of appeal must be obtained for each final judgment the appellant seeks to appeal. Bamburg v. St. Francis Medical Center, 45,024 (La.App.2d Cir.1/27/10), 30 So.3d 1071, writ denied, 10-0458 (La.4/30/10), 34 So.2d 294. As such, the *19 appeal against SSCI is not properly before us.
Assuming, arguendo, however, that a review of the summary judgment in favor of SSCI was appropriate, we agree with the trial court’s ruling. The undisputed facts clearly show that SSCI plugged the well it was |4 directed to plug in accordance with its instructions from the DNR. Mr. Winn presented no evidence of any negligence whatsoever on the part of SSCI.

Summary Judgment in favor of the DNR

The appellate court’s review of a grant or denial of a summary judgment is de novo. Bambwrg, supra, citing Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(B). The burden of proof on a motion for summary judgment remains with the movant. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880. When the movant, however, will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant is not required to negate all the essential elements of the adverse party’s claim, action or defense. Id. Rather, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Bambwrg, supra; Samaha, supra. Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and movant is entitled to summary judgment. See La. C.C.P. art. 966(C)(2).
|sLouisiana uses the duty-risk analysis to determine whether to impose liability under La. C.C. art. 2315. This analysis comprises five elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damage element). Carpenter v. Foremost Signature Ins. Co., 47,008 (La.App.2d Cir.2/29/12), 87 So.3d 264, citing Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La.3/10/06), 923 So.2d 627. The plaintiff bears the burden of proving every element of his cause of action by a preponderance of the evidence. Wood v. Spillers, 37,087 (La.App.2d Cir.4/9/03), 843 So.2d 555, writ denied, 03-1473 (La.9/26/03), 854 So.2d 366.
Again, it is undisputed that Mr. Mott incorrectly identified the well to be plugged; and, thus, the wrong well was plugged. In support of its motion for summary judgment, however, the DNR argues that Mr. Winn produced no evidence on the element of damages. As previously stated, the DNR supported its motion with the affidavit and report of Mr. Shell. He employed standard valuation techniques; and, even though the price of gas had increased over the last decade, he concluded that the well was a low producer. Mr. Shell noted that there was “little if any change in the total production [both wells through one meter] after [Lieber No. B-l] No. 2 well | fiwas [plugged].” This strongly *20 suggested that the production from the wrongly plugged well was substantially decreasing prior to the plugging, if it was producing at all. Further, Mr. Shell utilized a declining curve analysis to predict future production and ultimately concluded that, when the inevitable abandonment cost was considered,[3] the Lieber No. B-l was a liability rather than an asset. In summary, Mr. Shell opined that Mr. Winn did not suffer an economic loss by the plugging of the well and may have actually benefitted from not having to pay for the inevitable plugging.
Further, the DNR points out that there was no equipment removed from, or damaged, at the well site. A review of Mr. Winn’s testimony reveals that he was unaware of the condition of the well or what type of equipment was present at the site. He admitted that he had never even visited the well site. In addition, the DNR argued that Mr. Winn suffered no loss of mineral rights due to nonuse because he still had a second well on the property (the Lieber No. B-l — the well that was supposed to have been plugged).
In order to defeat the DNR’s well-supported motion for summary judgment, the burden then shifted to Mr. Winn to produce factual support sufficient to establish that he would be able to satisfy his eviden-tiary burden at trial. Our de novo review of the record leads us to agree with the trial judge that Mr. Winn failed to produce sufficient (or any) evidence of damages necessary to survive the motion.
|7On appeal, Mr. Winn argues that the DNR should not have been allowed to argue that he sustained no monetary loss because it did not plead it in its answer as an affirmative defense as required by La. C.C.P. art. 1005. This argument fails. Pointing out the lack of evidence in support of an element of the cause of action is not an affirmative defense required to be specially pleaded.
Next, Mr. Winn argues that the value of his well far outweighs the eventual cost of plugging it. Mr. Winn submitted an affidavit of his own regarding such costs and damages, but the trial judge did not allow it, finding that Mr. Winn was not qualified to provide competent testimony as to damages of that type. La. C.C.P. art. 967(A) provides, in pertinent part, that:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts’ opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
In the case sub judice, Mr. Winn testified consistently that he is not a sophisticated oil and gas operator. He admittedly does not have the knowledge and expertise to competently testify as to matters of well valuation and damages in this type of matter. We find, therefore, that the trial judge correctly excluded his affidavit setting forth his damages. See Hargrove v. Goods, 41,817, 41,934 (La.App.2d Cir.2/28/07), 953 So.2d 968. Thus, the only evidence presented regarding damages, or the lack ^thereof, was the expert opinion of Mr. Shell. With no competent contradictory evidence, we find that Mr. Winn failed to carry his burden of establishing that he was damaged by the wrongful *21 plugging of the well. As such, he cannot prevail on his tort claim and summary judgment was properly granted in favor of the DNR.

CONCLUSION

For the foregoing reasons, the summary judgment in favor of the State of Louisiana, Department of Natural Resources, dismissing with prejudice the claims of Plaintiff Doug Winn, is affirmed. Costs of appeal are assessed to Doug Winn.
AFFIRMED.

. The two Lieber wells were on the same meter. Mr. Winn’s operator attributed half of the total production to each well, deducted expenses and operator fees and sent him a check for the balance each month. The record indicates that some months there was a negative balance and Mr. Winn would not receive a check.

. EnerVest was the owner of the pipeline and purchaser of the gas being produced from the Lieber wells at the time. Mr. Winn was advised by EnerVest that there was excessive air in the line, which prompted Mr. Winn’s investigation into the wells.

. Mr. Shell stated that proper abandonment is the responsibility of the operator, i.e., Mr. Winn would be responsible for the cost of the eventual plugging of the well.