**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2792-19

KIM LABOR and KURT D.
LABOR, SR.,

     Plaintiffs-Appellants,

v.

CHRISRYAN, LLC, STATE
FARM FIRE AND CASUALTY
COMPANY, and STEVE
MEEHAN,

     Defendants,

and

HARRY MOREY,[1]

     Defendant-Respondent.

_____

     Argued March 24, 2021 – Decided July 30, 2021

     Before Judges Sumners and Mitterhoff.

     On appeal from the Superior Court of New Jersey, Law
     Division, Ocean County, Docket No. L-2694-17.

---

[1] Defendant Harry Morey was improperly pled as Harry More.

Michael B. Shaw argued the cause for appellants (Law Offices of John T. Bazzurro, LLC, attorneys; Michael B. Shaw, on the briefs).

Michael Della Rovere argued the cause for respondent (O'Toole, Couch & Della Rovere LLC, attorneys; Michael Della Rovere, on the brief).

PER CURIAM

Plaintiff Kim Labor appeals the trial court's October 11, 2019 order granting summary judgment in favor of defendant Harry Morey, the snow removal contractor for the parking lot where plaintiff slipped and fell.[2][3] Having reviewed the record and the governing legal principles, we conclude that the trial court erred in finding that plaintiff's lack of contractual privity with the contractor barred her direct claim against him. In addition, we find that there are otherwise genuine issues of material fact in dispute concerning the scope of defendant's duties under his oral contract with the owner of the parking lot, the weather conditions, and the conditions of the lot on the day of plaintiff's fall that precluded summary judgment. Accordingly, we reverse and remand for trial.

---

[2] Kim Labor's husband, Kurt Labor, Sr., asserted a per quod claim. For the sake of clarity, we use "plaintiff" to refer only to Kim Labor.

[3] We use "defendant" to refer only to Morey.

A-2792-19

In September 2017, plaintiff filed her negligence complaint against co-defendants Chrisryan, LLC, the premises owner; Steve Meehan, the sole member of Chrisryan, LLC; and State Farm Fire and Casualty Company, a commercial tenant of the subject property. In December 2018, after learning that defendant performed snow removal services at the premises, plaintiff amended her complaint, naming Morey as a direct defendant.

In August 2019, defendant moved for, and was ultimately granted summary judgment, which is the basis of this appeal. In February 2020, plaintiff and the co-defendants reached a settlement agreement and filed a stipulation of dismissal, dismissing Chrisryan, LLC, State Farm Fire and Casualty Company, and Steve Meehan from the case.

The motion record, construed in the light most favorable to plaintiff as the non-moving party, Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012), includes the following facts. Meehan is the sole member of Chrisryan, LLC, which owns an office building located in Toms River. He operates an independent insurance agency from the building, selling State Farm Fire and Casualty policies. For the thirteen years preceding plaintiff's fall, Meehan rented approximately fourteen spaces on the east side of the building's parking lot to its adjacent neighbor, plaintiff's employer Ocean Eye Institute.

3

Defendant was a snow removal contractor that serviced the parking lots of a local church and Meehan's property. In December 2011, he went to Meehan's insurance agency to purchase a policy for his truck and snowplow. Meehan overheard the conversation and asked if defendant was available to service his building's parking lot. The parties came to an agreement but did not execute a written contract.

In that regard, Meehan's and defendant's testimony differed on what would trigger defendant's duty to report to the property. Defendant testified that he was instructed to obtain approval from Meehan before plowing the parking lot, unless the weather conditions presented an obvious need for snow removal. Although there was no specific accumulation of snow that triggered his services, defendant testified that he would contact Meehan and ask if he wanted the lot to be cleared if at least one inch of snow had accumulated. If Meehan was away, defendant had been instructed to check with his office manager, Nicole, before plowing. Defendant also testified that Meehan requested that he use salt sparingly in order to preserve the asphalt in the lot. He only salted on the days following a large snowfall in order to prevent refreezing. Defendant never performed, and Meehan never requested, ice removal services only.

A-2792-19

Meehan, on the other hand, testified that the agreement did not require defendant to obtain permission before plowing. Defendant would clear the lot if and when it was needed. He confirmed that there was no predetermined amount of accumulation that triggered defendant's services, rather, he relied on defendant to use his judgment to ensure the lot was maintained in a safe condition.

On the morning of January 18, 2016, plaintiff, an employee of Ocean Eye Institute, arrived at work at approximately 8:15 a.m. Ocean Eye Institute has a parking lot in front of its building, and rents additional spaces for its employees in Meehan's lot, which is located behind its building. When plaintiff arrived, she noticed the front lot had been plowed, salted, and cleared of snow and ice, while the rear parking lot, where she was required to park, had not.

Plaintiff left work to go on her lunch break at approximately 11:45 a.m. While walking to her car, she noticed that the rear lot still had not been plowed or salted. Before reaching her vehicle, plaintiff slipped on black ice and fell to the ground. She sustained injuries to her lower back which eventually required a sacroiliac fusion. Plaintiff testified that it snowed from about 12:30 p.m. to 7:30 p.m. on January 17, 2016, and that it was cold and flurrying on the morning of her fall.

 A-2792-19

Later that day, Meehan received a phone call from an Ocean Eye Institute manager informing him that two of their employees had slipped in his parking lot, one of whom was seriously injured.[4]  Within a minute of receiving the call, Meehan went outside to inspect the lot but did not find black ice or any other hazardous conditions.  Meehan testified that it was sunny and the area between the cars in the leased spots was dry.  During his deposition, Meehan could not remember the weather or parking lot conditions when he arrived on the morning of January 18, 2016 but was confident there was no snow accumulation.  If snow was present when he arrived, he would have called defendant to remove it.  His expectation, however, was that if his lot required snow removal, it would have been done before he arrived in the morning.  Meehan testified that defendant did not service the lot, or request permission to, on January 18, 2016.

Defendant stated that he did not salt the lot on January 18, 2016, because "there was nothing to salt" and "the temperatures were higher that day."  The first-time defendant plowed or salted the subject lot in 2016 was on January 22, following a large snowfall.  During discovery defendant produced billing records from November 5, 2015 through March 9, 2016.  A February 3, 2016

_____

[4]  The record does not include any details of the circumstances of the second employee's fall.

6

invoice shows that defendant performed snow and ice removal services in the subject lot for the first time of the 2015-2016 winter on January 22, 2016.

On the return date of defendant's motion for summary judgment, the parties appeared for oral argument. Plaintiff argued that summary judgment was improper because genuine issues of material fact existed regarding defendant's duties under the oral contract, as well as the weather conditions on the day of her fall. Defendant took the position that he did not owe plaintiff a duty, regardless of the terms of the contract. Even if the agreement required defendant to plow and salt on the morning of plaintiff's fall, that duty was owed to Meehan, therefore plaintiff had no viable theory of recovery. Meehan, whose State Farm agency apparently provided some form of coverage to defendant, did not oppose the motion, and thus waived his rights to contribution and indemnification.

Relying on the February 3, 2016 invoice, the motion judge found that defendant had not serviced the subject lot on the day of plaintiff's fall, and therefore could not be held liable for plaintiff's injuries. On October 11, 2019, the judge entered an order granting defendant's motion.

A trial court's order granting summary judgment is entitled to no "special deference" by an appellate court and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016). We "review

A-2792-19

the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); R. 4:46-2(c). Guided by these principles, in this case we conclude the trial court erred in granting summary judgment.

In order to establish a prima facie case of negligence, a plaintiff must establish: "(1) [a] duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages." Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996)). The first element, duty, is a question of law to be decided by the trial judge. Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 572 (1996) (citing Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991)). "[N]o bright line rule . . . determines when one owes a legal duty to prevent a risk of harm to another." Wlasiuk v. McElwee, 334 N.J. Super. 661, 666 (App. Div. 2000). Instead, the imposition of a duty requires a court to consider many factors, including: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise care; and (4) the public interest in the proposed solution. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (citing Goldberg v. Hous. Auth. of Newark,

38 N.J. 578, 583 (1962)).  "Ultimately, [New Jersey] Supreme Court cases repeatedly emphasize that the question of whether a duty exists is one of 'fairness' and 'public policy.'"  Wlasiuk, 334 N.J. Super. at 666-67 (quoting Hopkins, 132 N.J. at 439).

Initially, we note that the lack of contractual privity between plaintiff and defendant is not fatal to her claim.  Irrespective of privity:

> a contractor has a duty to persons, other than the one with whom the contractor has made the contract, to carry out his undertaken work in a careful and prudent manner, and he [or she] may be responsible to third persons for their personal injuries and property damages proximately caused by his [or her] failure to exercise that care.
>
> [Aronsohn v. Mandara, 98 N.J. 92, 105-06 (1984).]

It is undisputed that Meehan and defendant had an oral agreement regarding winter maintenance of the subject lot.  From that agreement springs a duty of due care, defined by the contractual undertaking, owed by defendant to plaintiff, to carry out his contractual obligations in a careful and prudent manner. Ibid.

Exactly what defendant's duties were and under what circumstances they were triggered, however, are factual disputes material to the resolution of this case which preclude summary judgment.  Meehan testified the terms of the oral

9

contract required defendant to use his professional judgment to render his services if and when they were needed. Defendant, on the other hand, testified that the agreement required him to notify Meehan or his office manager when he believed the lot needed to be cleared and obtain authorization before plowing.

Precisely what snow and ice conditions triggered defendant's obligation to inspect and/or report to the property, what the weather conditions were on the day before the fall, and the condition of the lot on the day of plaintiff's fall, are disputed. Plaintiff alleged that it snowed for seven continuous hours the evening before she fell. She also certified that she noticed Ocean Eye Institute's front lot, which is serviced by another contractor, had been cleared of snow and ice by the time she arrived in the morning. Although plaintiff's version is rebutted by Meehan's assertions that his lot was free of snow and ice when he inspected it shortly after he was notified of the fall, we accept as true the non-moving party's version for purposes of this motion. Because disputes exist regarding the scope of defendant's duties, under what circumstances these duties were triggered, and the condition of the subject lot on the morning of plaintiff's fall, we conclude that summary judgment was improvidently granted.

Reversed and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-2792-19